663 So.2d 62 (1995)
Joseph B. KILPATRICK, et al., Plaintiffs-Appellants,
v.
ALLIANCE CASUALTY AND REINSURANCE COMPANY, et al., Defendants-Appellees.
No. 95-17.
Court of Appeal of Louisiana, Third Circuit.
July 5, 1995.
Writ Denied November 17, 1995.
*64 William Stafford Neblett, Alexandria, for Joseph B. Kilpatrick, et ux Indiv. Etc.
Michael Thomas Johnson, Alexandria, for Liga & McManus.
Robert Lewis Bussey, Asst. Dist. Atty., for Rapides Parish Police Jury.
Charles F. Wagner, Alexandria, for LA. DOTD.
Before KNOLL, COOKS and PETERS, JJ.
KNOLL, Judge.
This personal injury lawsuit involves an automobile collision between a left-turning gravel truck and another vehicle that was attempting to pass. The trial court allocated 70% fault to Joseph Kilpatrick, the driver of the passing vehicle, and 30% to Gerald R. McManus, Jr., the driver of the left-turning gravel truck, and awarded Kilpatrick $5,000.00 general damages, $1,873.00 for property damages, and special damages of $2,780.00. The trial court denied the loss of consortium claims of Kilpatrick's wife, Janice, and his minor children, Brandy and Summer, and denied Kilpatrick's damage claim for the loss of use of his vehicle.
The Kilpatricks appeal, contending that the trial court was manifestly erroneous in: (1) assessing Joseph Kilpatrick with 70% comparative fault; (2) in awarding $5,000.00 *65 general damages; (3) failing to award damages for loss of consortium for Janice, Brandy, and Summer; and (4) failing to award damages for Joseph Kilpatrick's loss of use of his vehicle. We reverse the trial court's allocation of fault, increase the general damage award, and award damages for loss of consortium.

FACTS
On June 12, 1991, McManus, an employee of Rodrick Bushnell, was operating an eighteen-wheel gravel truck, traveling in an easterly direction on Louisiana Highway 116. Kilpatrick was driving his pick-up truck in an easterly direction behind McManus's gravel truck.
Kilpatrick testified that he followed McManus's gravel truck for approximately two miles and that the gravel truck was steadily traveling 45 m.p.h. Finally, when the left-hand lane was clear of traffic, Kilpatrick decided to pass because the gravel truck was travelling slowly. He stated that his pickup truck cleared the trailer portion of McManus's eighteen-wheeler. However, when his pickup truck was even with the tractor portion of McManus's vehicle (at the left rear wheel of the gravel truck), McManus attempted to turn left onto Duncan Road without signalling. When McManus turned left, his gravel truck struck Kilpatrick's vehicle and knocked it into the ditch.
McManus's testimony differed from Kilpatrick's. McManus stated that he observed Kilpatrick's vehicle approaching from the rear just before he (McManus) attempted to make his left turn; he noted that Kilpatrick's vehicle seemed to be skidding out of control. McManus then stated that in an attempt to avoid a rear end collision, he shifted the gravel truck into a lower gear, signalled his turn, and attempted to get off the road by turning left.
The Kilpatricks brought suit against Gerald McManus and Alliance Casualty and Reinsurance Company (hereafter Alliance Casualty), the liability carrier of McManus's employer, Rodrick Bushnell. After suit was filed, Alliance Casualty was declared insolvent, and the Louisiana Insurance Guaranty Association appeared in its place. For ease of reference we will simply refer to the defendants as McManus.

APPELLATE REVIEW
An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless they are clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).
In Mart v. Hill, 505 So.2d 1120 (La.1987), the Louisiana Supreme Court stated the two-tier test for reversal on appellate review:
(1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
(2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
A reviewing court must do more than simply review the record for evidence that supports or controverts the trial court's findings. It must review the record in its entirety to determine whether the trial court's findings were clearly wrong or manifestly erroneous. Stobart, 617 So.2d at 882. Also, the reviewing court must ascertain whether the trial court's conclusions were reasonable. Even when an appellate court may feel that its own evaluations are more reasonable than the factfinder's, reasonable determinations and inference of fact should not be disturbed. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). In Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990), citing Borden, Inc. v. Howard Trucking Co., 454 So.2d 1081 (La.1983), the Louisiana Supreme Court stated, "the appellate court's disagreement with the trial court, alone, is not grounds for substituting its judgment for that of the trier of fact."
Additionally, an appellate court must keep in mind that if a trial court's findings are reasonable, based upon the entire record, an appellate court may not reverse such findings even if it is convinced that had it been sitting as trier of fact, it would have weighed the evidence differently. Housley v. Cerise, 579 So.2d 973 (La.1991). In Stobart, 617 So.2d at 883, it was stated *66 that this well-settled principle of review is grounded not only upon the trial court's better capacity to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts. Where there are two permissible views of evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.

APPLICABLE LAW
The Kilpatricks contend that the trial court was manifestly erroneous in its assessment of 70% fault to Joseph Kilpatrick. They argue that McManus initiated his left-hand turn without first determining that such a maneuver could be safely taken.
Louisiana jurisprudence holds that the left-turning motorist and the overtaking and passing motorist must exercise a high degree of care because they are engaged in dangerous maneuvers. Neal v. Highlands Ins. Co., 610 So.2d 177 (La.App. 3 Cir.1992), writ denied, 612 So.2d 100 (La.1993).
The law sets forth the duties imposed on a left-turning driver as well as a passing driver. The duties imposed upon a left-turning motorist are found in La.R.S. 32:104. Under this statute, McManus was required to give a signal of his intent to make a left turn at least 100 feet before reaching Duncan Road. In addition to giving the proper signal, McManus was required to make a proper observation that the turn could be made without endangering a passing vehicle. Bamburg v. Nelson, 313 So.2d 872 (La.App. 2 Cir.), writ denied, 318 So.2d 57 (La.1975). The onerous burden placed upon a left-turning motorist is not discharged by the mere signaling of an intention to turn. The giving of a signal, which fact is disputed in the case sub judice, is immaterial if at the time the driver of the turning vehicle did not have the opportunity to make the turn in safety. Husser v. Bogalusa Coca Cola Bottling Co., 215 So.2d 921 (La.App. 1 Cir.1968).
Finally, in a vehicular collision case, the plaintiff may take advantage of a presumption of the defendant's negligence when the plaintiff proves the defendant executed a left-hand turn and crossed the center line at the time of impact. Thomas v. Champion Ins. Co., 603 So.2d 765 (La.App. 3 Cir.1992). Accordingly, the burden rests heavily on the motorist who desires to make a left turn to explain how the accident occurred and show he is free of negligence. Miller v. Leonard, 588 So.2d 79 (La.1991).
The law equally imposes a duty upon the passing motorist. This duty is specifically set forth in La.R.S. 32:73 and 32:75. Based on these statutes, the jurisprudence holds that the driver of a following or overtaking vehicle must be alert to the actions of motorists preceding him on the highway. Burns v. Evans Cooperage Co., 208 La. 406, 23 So.2d 165 (1945). More particularly, the driver of an overtaking or passing vehicle has the duty to ascertain before attempting to pass a preceding vehicle that from all the circumstances of traffic, lay of the land, and conditions of the roadway, the passing can be completed with safety. Palmieri v. Frierson, 288 So.2d 620 (La.1974).
From the outset, we note that the trial court was presented with disputed testimony about whether McManus had signaled his left turn and whether he attempted to make the left turn at 45 m.p.h. or a lesser speed. After reviewing the testimony, the trial court determined both that McManus had signaled his turn and that he was not travelling at 45 m.p.h. when he attempted his turn. We find no manifest error in these determinations. Nevertheless, for reasons that follow, we find that neither of these findings militate against our determination that the trial court was manifestly erroneous in finding Kilpatrick at fault, to any degree, in causing this accident.
As pointed out in the jurisprudence cited above, if the driver of a left-turning vehicle signals a left-hand turn, the left-turning driver only fulfills one-half of the requirement for making such a maneuver. Husser, 215 So.2d at 925. In the case sub judice, the record is uncontradicted that McManus observed Kilpatrick's pickup truck approaching behind him in the right-hand lane of travel and that he never again looked in his rearview mirror to ascertain where the pickup truck was before he began his left-hand turn. It is likewise undisputed that Kilpatrick's *67 pickup truck had cleared the trailer portion of McManus's eighteen-wheeler when McManus began his turn to the left and that it was the left rear wheels of the tractor portion of the eighteen-wheeler that struck Kilpatrick's pickup truck. Accordingly, when the accident occurred, Kilpatrick had almost completed his passing maneuver. It is clear from the record that had McManus looked backward immediately prior to turning, he would have seen that he could not make the turn safely.
Likewise, even if we assume that McManus was not attempting to make the left-hand turn at 45 m.p.h., that fact does not disway us from finding that the trial court was manifestly erroneous in casting Kilpatrick with any degree of fault. It is unreasonable to require the following driver to anticipate that the preceding driver will make a left turn based on the mere fact that the preceding vehicle was traveling slowly. Barber v. Sumrall, 206 So.2d 560 (La.App. 1 Cir.1968). As shown by the record, Kilpatrick patiently followed the gravel truck for a long distance, checked for oncoming traffic, and did not proceed with his passing maneuver until he determined that he could safely proceed. In stark contrast, the testimony from McManus was that after he observed Kilpatrick's pickup behind him in the right-hand lane of travel, he never again looked into his rear view mirror before he started his left turn. Based on these facts, the only conclusion supported by the record is that it was proper for Kilpatrick to begin his passing maneuver and that it was incumbent upon McManus to again look to his rear to see if the left-hand lane was clear before beginning his left turn.
Therefore, after carefully examining the record in light of the well-established jurisprudence of this state, we find that the trial court's allocation of 70% fault to Kilpatrick is not supported by the record and was manifestly erroneous. It is clear that McManus was the only person who could have avoided this accident. Thus we find McManus totally at fault and will recast the judgment accordingly.

GENERAL DAMAGES
Kilpatrick next contends that the trial court abused its discretion in awarding him only $5,000.00 for the injuries he suffered as a result of this accident. He argues that the trial court properly found that he suffered a cervical strain, but failed to consider that the accident also aggravated a pre-existing neck condition, and caused him sleeplessness and headaches.
When damages are insusceptible of precise measurement, much discretion is left to the trial court to assess reasonable damages. La.Civ.Code art. 2324.1. Before the appellate court can disturb an award of general damages, the record must clearly reveal that the trial court abused its discretion. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976). Further elaborating in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the court noted that the initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the much discretion of the trier of fact. The question for the appellate court is not whether a different award may have been more appropriate, but rather whether the trial court's award can be reasonably supported by the record. Nejame v. Hamiter, 614 So.2d 848 (La.App. 2 Cir.1993).
After the appellate court has determined that the trier of fact abused its discretion in making its general damages award, the appellate court may disturb the award, but only to the extent of lowering it (or raising it) to the highest (or lowest) point that is reasonable within the sound discretion afforded that court. Reck v. Stevens, 373 So.2d 498 (La.1979). As stated in Youn, 623 So.2d at 1261, the appellate court may resort to awards in other cases "for the purpose of determining the highest or lowest point which is reasonably within that discretion."
The record shows that Dr. Robert K. Rush, a family practitioner, first examined Kilpatrick on June 14, 1991, two days after the accident. Kilpatrick complained of pain and stiffness in his neck, headaches, and *68 soreness in his left leg. After completing his examination, Dr. Rush stated that Kilpatrick suffered a cervical strain and began him on a regimen of physical therapy and prescriptive medication for the muscle spasms, inflammation, and soreness. A re-examination on June 28, 1991, showed improvement in his condition, but physical therapy and prescription medication were continued because of Kilpatrick's complaints of tenderness.
Kilpatrick maintained regular office visits with Dr. Rush until he was released on January 21, 1992. During that period of treatment, Kilpatrick complained of neck pain, headaches, and sleeplessness that were treated with steroid injections and antidepressant sedatives; Kilpatrick also continued with physical therapy and participated in a reconditioning program. In December of 1991, Dr. Rush also ordered X rays of Kilpatrick's neck. The X rays showed that he had a degenerative spur formation at C5, a pre-existing medical condition, that was aggravated by the accident. Dr. Rush opined that Kilpatrick's neck pain and headaches were not associated with any disc pathology in the cervical spine and that surgical intervention would not be needed.
As of the time of trial, Kilpatrick testified that he still suffered from neck and head pain intermittently, depending on the intensity of the work he performs. He stated that he stopped seeing Dr. Rush because he was told that there was nothing more that the doctor could do for him. Likewise, he stated that he discontinued taking the prescriptive medication because the pills hurt his stomach. Kilpatrick also said that he stopped going to physical therapy because he found that it made his pain worse.
The record establishes that although this medical testimony was not contested, the trial court's written reasons show that its sole award of damages was for Kilpatrick's cervical strain. Based upon the injuries that were proven at trial, we find that the trial court abused its discretion in awarding only $5,000.00. After carefully reviewing the record, we find that the lowest amount awardable for these injuries is $20,000.00, and we will amend the judgment accordingly.

LOSS OF CONSORTIUM
Janice Kilpatrick, the wife of Joseph Kilpatrick, and their two minor children contend that the trial court erred in failing to award them damages for loss of consortium.
It is well settled in Louisiana law that the elements in a claim for loss of consortium are: (1) society, including general companionship, affection, sexual relations; (2) support, which is lost family income that would go to support the uninjured spouse; and, (3) service, which is the uncompensated work around the house or educational help to the children, which presumably will have to be obtained from another source for a price as a result of the injury. Turner v. Smith, 556 So.2d 983 (La.App. 3 Cir.1990), writ not considered, 559 So.2d 1364 (La.1990).
In the case sub judice, the record shows that because of his injuries in the accident, Joseph Kilpatrick is unable to operate his saw mill without his wife's assistance, that he is irritable, and that he has been unable to participate in recreational activities with his family. Even though this aspect of the damage claim was not elaborated upon, we find nonetheless that the trial court erred in failing to make an award since there was sufficient proof of this item of damages at trial. Therefore, based upon the record before us, we find that Janice Kilpatrick and her two minor children are entitled to $5,000.00 for loss of consortium.

DAMAGES FOR THE LOSS OF USE OF VEHICLE
Kilpatrick next contends that the trial court erred in failing to make an award for his loss of use of his pickup truck.
In cases in which the wrecked vehicle is totally destroyed, damages for the rental of a vehicle are recoverable only for a reasonable time, namely, that time in which the owner becomes aware of the situation and secures a replacement for the destroyed vehicle. Thomas v. Champion Ins. Co., 603 So.2d 765 (La.App. 3 Cir.1992).
In the present case, the record is void of any testimony that indicates when Kilpatrick replaced his pickup truck, if he *69 did. Likewise, there was no testimony that a replacement vehicle was rented or what the rental charges might be for a comparable rented vehicle. Accordingly, we cannot make an award for this item of damages.
For the foregoing reasons, the judgment of the trial court denying Joseph Kilpatrick's claim for loss of use of his vehicle and cost for expert witness fees is affirmed. The judgment of the trial court is further amended to increase the general damage award, and to reverse the allocation of fault and the disallowance of the claim for loss of consortium, and judgment is recast as follows:
IT IS ORDERED, ADJUDGED, AND DECREED herein that Gerald R. McManus and Louisiana Insurance Guaranty Association, appearing on behalf of Alliance Casualty and Reinsurance Company, are assessed with 100 percent fault for causing the accident that injured Joseph Kilpatrick.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of JOSEPH KILPATRICK, against the defendants, Gerald R. McManus and Louisiana Insurance Guaranty Association, appearing on behalf of Alliance Casualty and Reinsurance Company, in solido, in the amount of TWENTY-FOUR THOUSAND SIX HUNDRED FIFTY-THREE AND NO/100 ($24,653.00) DOLLARS, together with legal interest from the date of judicial demand, until paid.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of JANICE KILPATRICK, individually, and JOSEPH KILPATRICK, on behalf of his two minor children, BRANDY KILPATRICK AND SUMMER KILPATRICK, against the defendants, Gerald R. McManus and Louisiana Insurance Guaranty Association, appearing on behalf of Alliance Casualty and Reinsurance Company, in solido, in the amount of FIVE THOUSAND AND NO/100 ($5,000.00) DOLLARS, together with legal interest from the date of judicial demand, until paid.
Costs of the trial court and this appeal are assessed to Gerald R. McManus and Louisiana Insurance Guaranty Association, appearing on behalf of Alliance Casualty and Reinsurance Company.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.