799 So.2d 610 (2001)
Rachael FALGOUT and David Theriot
v.
Frisnel LOUIS-JEUNE, Clyde Carson, Jr., Liberty Cab Co., North American Fire and Casualty Insurance Company and Allstate Insurance Company.
Frisnel Louis-Jeune,
v.
David Theriot and the Allstate Insurance Company.
Nos. 2000-CA-2452, 2000-CA-2453.
Court of Appeal of Louisiana, Fourth Circuit.
October 3, 2001.
Order on Grant of Rehearing November 13, 2001.
*612 T. Carey Wicker, III, Capitelli & Wicker, New Orleans, LA, Counsel for Plaintiffs/Appellees, Rachael Falgout and David Theirot.
Christopher E. Lozes, Lozes & Cambre, New Orleans, LA, Counsel for Allstate Insurance Company.
Michael L. Mullin, New Orleans, LA, Counsel for Appellant, Frisnel Louis-Jeune.
Peyton B. Burkhalter, Aucoin & Courcelle, L.L.C., Metairie, LA, Counsel for Defendants/Appellants, Frisnel Louis-Jeune and North American Fire and Casualty Ins. Co.
Court composed of Judge STEVEN R. PLOTKIN, Judge DENNIS R. BAGNERIS, SR., Judge MICHAEL E. KIRBY.
STEVEN R. PLOTKIN, Judge.
Defendants, Frisnel Louis-Jeune and North American Fire & Casualty Insurance Co. (hereinafter referred to collectively as "Mr. Louis-Jeune"), appeal a trial court judgment awarding damages to plaintiffs Rachael Falgout (Rachael Theriot at the time of trial) and David Theriot (hereinafter referred to collectively as "the Theriots"), for injuries and damages received in a motor vehicle accident. For the reasons explained below, we affirm in part, reversed in part, amended in part, and render.

FACTS
The accident in question occurred on Tchoupitoulas Street in the City of New Orleans in the early evening on January 24, 1997, when the cab driven by Mr. Louis-Jeune struck the side of a pick-up truck driven by Mr. Theriot. The cab had been following the pick-up truck as it proceeded toward uptown after exiting the off-ramp from the Greater New Orleans ("GNO") bridge. Because Mr. Theriot wanted to go toward downtown, to the French Quarter, he was making a U-turn from the lane headed uptown to the lane headed downtown at the time of the accident. Actually, Mr. Theriot intended to make what was essentially a left turn, driving all the way across the lane headed downtown onto a paved area just off the traveled portion of the roadway, then return to the downtown lane. As Mr. Theriot was making this maneuver, the cab struck his pick-up truck on the driver's side, between the back door and the back bumper, causing minor damage to both vehicles. It had been raining prior to the accident, and the road was wet.
Three travel lanes exist on Tchoupitoulas Street where the accident occurred-one lane going in a downtown direction, and two lanes going in an uptown direction, with the center lane being a left-turn lane for the upramp to the GNO bridge. The upramp entrance was located just beyond the location where the accident occurred. Both the cab and the pick-up truck had *613 been travelling in the center lane just prior to the accident. Mr. Louis-Jeune intended to turn left on the upramp for the GNO bridge to take his two passengers to a hotel located on the Westbank of the Mississippi River. In fact, Mr. Louis-Jeune had picked up his passengers at the New Orleans International Airport and had previously taken then to several downtown hotels searching for a room. Locating a room was a problem because the Superbowl was being held in New Orleans that weekend.
As a result of the accident, one of Mr. Theriot's three passengers, Ms. Falgout, suffered injury to her neck. Mr. Theriot also suffered some minor physical ailments. Accordingly, the Theriots filed suit against Mr. Louis-Jeune and North American Fire & Casualty Insurance Co., among other defendants who were dismissed prior to trial. Mr. Louis-Jeune also suffered minor injuries as a result of the accident. Accordingly, he filed suit against Mr. Theriot and Allstate Insurance Co. The two lawsuits were consolidated for purposes of trial.
Following trial on the matter, the trial court assigned 100 percent of the fault for the accident to Mr. Louis-Jeune and awarding damages to the Theriots. Mr. Louis-Jeune appeals, challenging the trial court's finding that he was 100 percent at fault for causing the accident, and challenging the Theriots' damage awards, as further discussed below.

COMPARATIVE FAULT
In finding that Mr. Louis-Jeune was 100 at fault for causing the accident in question, the trial court stated as follows:
The driver of the other vehicle, David Theriot, was attempting the execute a u-turn on Tchoupitoulas Street. At that time Frisnel Louis-Jeune was following the Theriot vehicle and attempted to pass that vehicle as David Theriot began the u-turn maneuver. Whether the impact occurred in the left turn lane or in the opposing traffic lane is not relevant to the fault issue. The following vehicle is required to ascertain that a passing maneuver is safe before attempting to pass another vehicle.
Although some of the facts are disputed in this case, it is clear that Mr. Louis-Jeune was attempting to pass or overtake Mr. Theriot's pick-up truck on the left side at the time of the accident. Mr. Louis-Jeune claims that Mr. Theriot's pick-up truck moved to the right just prior to the U-turn maneuver, and that he naturally assumed that Mr. Theriot was pulling off the road. Accordingly, Mr. Louis-Jeune claims, he prepared to pass Mr. Theriot's pick-up truck on the left, when Mr. Theriot made a sharp left turn suddenly and without warning. Mr. Louis-Jeune claims that he could not have avoided the accident at that point. Mr. Louis-Jeune staunchly asserts that the accident occurred in the center turn lane of the street.
Mr. Theriot claims however that he signaled his intention to turn left prior to executing the left-hand turn and that Mr. Louis-Jeune was actually travelling in the on-coming traffic lane, trying to pass him, when the accident occurred. Because the vehicles did not stop when the accident occurred, but proceeded to move off the road onto the paved area where Mr. Theriot intended to turn, there is no objective evidence available to establish the exact location of the accident. The testimony at trial is conflicting on this issue. Thus, the trial court declined to make a factual finding on that issue, preferring instead to simply cite the duties of a passing motorist.
*614 In Kilpatrick v. Alliance Casualty and Reinsurance Co., 95-17 (La.App. 3 Cir. 7/5/95), 663 So.2d 62, a case, much like the instant case, involving a passing vehicle and a left-turning vehicle, the duties of the two drivers were set forth as follows:
Louisiana jurisprudence holds that the left-turning motorist and the overtaking and passing motorist must exercise a high degree of care because they are engaged in dangerous maneuvers. Neal v. Highlands Ins. Co., 610 So.2d 177 (La.App. 3 Cir.1992), writ denied, 612 So.2d 100 (La.1993).
The law sets forth the duties imposed on a left-turning driver as well as a passing driver. The duties imposed upon a left-turning motorist are found in La. R.S. 32:104. Under this statute, [the left-turning motorist] was required to give a signal of his intent to make a left turn at least 100 feet before reaching Duncan Road. In addition to giving the proper signal, [the left-turning motorist] was required to make a proper observation that the turn could be made without endangering a passing vehicle. Bamburg v. Nelson, 313 So.2d 872 (La. App. 2 Cir.), writ denied, 318 So.2d 57 (La.1975). The onerous burden placed upon a left-turning motorist is not discharged by the mere signaling of an intention to turn. The giving of a signal, which fact is disputed in the case sub judice, is immaterial if at the time the driver of the turning vehicle did not have the opportunity to make the turn in safety. Husser v. Bogalusa Coca Cola Bottling Co., 215 So.2d 921 (La. App. 1 Cir.1968).
Finally, in a vehicular collision case, the plaintiff may take advantage of a presumption of the defendant's negligence when the plaintiff proves the defendant executed a left-hand turn and crossed the center line at the time of impact. Thomas v. Champion Ins. Co., 603 So.2d 765 (La.App. 3 Cir.1992). Accordingly, the burden rests heavily on the motorist who desires to make a left turn to explain how the accident occurred and show he is free of negligence. Miller v. Leonard, 588 So.2d 79 (La. 1991).
The law equally imposes a duty upon the passing motorist. This duty is specifically set forth in La. R.S. 32:73 and 32:75. Based on these statutes, the jurisprudence holds that the driver of a following or overtaking vehicle must be alert to the actions of motorists preceding him on the highway. Burns v. Evans Cooperage Co., 208 La. 406, 23 So.2d 165 (1945). More particularly, the driver of an overtaking or passing vehicle has the duty to ascertain before attempting to pass a preceding vehicle that from all the circumstances of traffic, lay of the land, and conditions of the roadway, the passing can be completed with safety. Palmieri v. Frierson, 288 So.2d 620 (La.1974).
Id. at 4-5, 663 So.2d at 66. In Kilpatrick, the trial court assigned 70 percent of the liability for the accident to the passing motorist, and 30 percent to the left-turning motorist. Id. The trial court found that the left-turning motorist had signaled his intention to turn left, and rejected the allegation of the passing motorist that the left-turning motorist was going 45 miles per hour when he turned left. Id. at 5, 663 So.2d at 66. However, the appellate court reversed the trial court's comparative fault decision, and imposed 100 percent of the liability for the accident on the left-turning motorist. Id. The appeals court found that the trial court's factual findings, which were not manifestly erroneous, nevertheless were not sufficient to overcome the presumption of negligence on the part of the left-turning motorist. Id. Signaling the left-hand turn fulfills only one-half of *615 the left-turning motorist's duty, the appellate court found; the left-turning motorist also had a duty to "make a proper observation that the turn could be made without endangering a passing vehicle." Id. at 4, 663 So.2d at 66. The appellate court stated as follows:
[A]fter [the left-turning motorist] observed [the passing motorist's] pickup behind him in the right-hand lane of travel, he never again looked into his rear view mirror before he started his left turn. Based on these facts, the only conclusion supported by the record is that it was proper for [the passing motorist] to begin his passing maneuver and that it was incumbent upon [the left-turning motorist] to again look to his rear to see if the left-hand lane was clear before beginning his left turn.
Id. at 7, 663 So.2d at 67. Because the left-turning motorist obviously failed to fulfill the second duty in Kilpatrick, the appellate court found that the left-turning motorist must bear 100 percent of the fault for the accident. Id.
From the Kilpatrick case, we glean the following principles to guide us in determining whether the trial court improperly failed to impose any liability on Mr. Theriot, the left-turning motorist. First, a presumption of negligence on the part of a left-turning motorist arises with proof that the motorist "executed a left-hand turn and crossed the center line at the time of impact." Id. at 5, 663 So.2d at 66. Second, in order to overcome that presumption, the plaintiff must prove two things: (1) that he signaled his intent to make a left turn at least 100 feet before reaching the point where he intended to turn, and (2) that he "make a proper observation that the turn could be made without endangering a passing vehicle." Id. at 4, 663 So.2d at 66.
Under the facts of the instant case, a presumption of negligence against Mr. Theriot arises from the fact that all the record evidence indicates that he "executed a left-hand turn and crossed the center line at the time of impact." Id. at 5, 663 So.2d at 66. Moreover, Mr. Theriot failed to present evidence sufficient to overcome that presumption. Although he testified that he signaled his intention to make a left-turn, Mr. Theriot admitted that he did not check for traffic prior to executing his u-turn maneuver. Accordingly, Mr. Theriot, by his own admission, failed to fulfill the second duty set forth in Kilpatrick for left-turning motorists-the duty "to make a proper observation that the turn could be made without endangering a passing vehicle." The trial court was therefore manifestly erroneous in failing to assign at least some percentage of liability to Mr. Theriot.
However, some distinctions exist between the instant case and the Kilpatrick case. The most important distinction is found in the fact that the passing vehicle in Kilpatrick had cleared the entire trailer portion of the left-turning motorist's 18-wheel vehicle prior to the impact, indicating that the left-turning motorist had ample opportunity to see the passing motorist prior to executing the left turn. Id. at 2, 663 So.2d at 65. In the instant case, the testimony indicates that the impact occurred almost immediately after Mr. Theriot began his left-turning maneuver, meaning that he had little opportunity to check the location of the passing vehicle prior to the impact.
Moreover, as stated in Kilpatrick, both left-turning motorists and passing motorists are engaged in dangerous maneuvers. Id. at 4, 663 So.2d at 66. The court also held in Kilpatrick that the law "equally" imposes duties on passing motorists and left-turning motorists. Id. at 5, 663 So.2d *616 at 66. The trial court implicitly found that Mr. Louis Jeune failed to fulfill his duties as a passing motorist to "be alert to the actions of motorists preceding him on the highway," and "to ascertain before attempting to pass a preceding vehicle that from all the circumstances of traffic, lay of the land, and conditions of the roadway, the passing can be completed with safety." Id. at 5, 663 So.2d at 66. In Coleman v. State, Through Department of Transportation and Development, 524 So.2d 1281 (La.App. 3 Cir.1998), the court found that a passing motorist who moved into the left lane in order to execute a passing maneuver without first ascertaining that the move could be safely executed was a contributing cause to the accident. Id. Moreover, in Harris v. Aetna Insurance Co., 509 So.2d 486 (La.App. 3 Cir.1987), the court denied recovery to a passing motorist who had not preempted the left lane when the left-turning motorist turned, finding that the left-turning motorist had not breached his duty of care.
Given the fact that the record evidence in this case indicates that both Mr. Theriot and Mr. Louis-Jeune breached their respective duties and that the breach of those duties on the part of both drivers contributed to the accident in question, we find that Mr. Theriot and Mr. Louis-Jeune must share the fault for causing the motor vehicle accident at issue in this case. Accordingly, we reverse the trial court's finding that Mr. Theriot was not at fault in causing the accident, and apportion fault 40 percent to Mr. Theriot and 60 percent to Mr. Louis-Jeune. Mr. Louis-Jeune's other arguments on this issue are pretermitted.

DAMAGES

Denial of motion for involuntary dismissal
Following the presentation of the Theriots' case, Mr. Louis Jeune moved for involuntary dismissal of Mr. Theriot's past medical expense claim and Ms. Falgout's lost wage claim; the trial court denied that motion. On appeal, Mr. Louis-Jeune claims that the trial court applied the incorrect standard to the motion for involuntary dismissal, saying that he was required to consider the evidence submitted in the light most favorable to the party opposing the motion.
La. C.C.P. art. 1672(B) provides as follows:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all evidence.
Generally, the standard for granting an involuntary dismissal in the defendant's favor is much lower than the standard for granting a directed verdict. State in the Interest of Joseph, 97-0780, p. 6 (La.App. 4 Cir. 12/23/97), 705 So.2d 776, 782. The trial court is required to consider the evidence in the light most favorable to the plaintiff when deciding a motion for directed verdict, while it is required to evaluate the evidence without applying any special inferences in favor of either party in a motion for involuntary dismissal. Id. Thus, Mr. Louis-Jeune correctly argues that the trial judge applied the wrong standard when deciding his motion for involuntary dismissal. Nevertheless, a trial judge is vested with much discretion in *617 determining whether to grant a motion for involuntary dismissal. Lopez v. State, Louisiana Health Care Authority/University Medical Center, 98-577, p. 4 (La.App. 3 Cir. 10/28/98), 721 So.2d 518, 520. Thus, we will review the evidence presented by the Theriots in support of each claim contested by Mr. Louis-Jeune to determine whether the trial court abused his discretion when he found that the claim had been established by a preponderance of the evidence.[1]

Mr. Theriot's claim for medical expenses
Under Louisiana law, a plaintiff may be awarded past medical expenses incurred as a result of an injury. Este' v. State Farm Ins. Companies, 96-99, p. 10 (La.App. 3 Cir. 7/10/96), 676 So.2d 850, 857. In order to be entitled to recover, the plaintiff must prove that, more probably than not, the medical treatment was necessitated by trauma suffered in the accident. Id. However, when a plaintiff alleges that he or she has incurred medical expenses and presents a bill to support that allegation, that evidence is sufficient to support an award for past medical expenses, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident. Id.
The trial court awarded Mr. Theriot $831.75 in medical expenses. Mr. Theriot testified that he had various physical problems following the accident, including lower abdominal problems and sexual problems. The record contains a number of invoices for blood work performed on Mr. Theriot during the two months following the accident, and an itemization of Mr. Theriot's medical expenses, which totaled $831.75. Although no testimony from a physician was presented to corroborate those invoices, the record contains no contradictory evidence or evidence that casts reasonable suspicion that the bill is unrelated to the accident in question. Accordingly, we find no abuse of the trial judge's discretion in his decision to deny the motion for involuntary dismissal of Mr. Theriot's past medical expense claim.

Ms. Falgout's claim for lost wages
In order to be entitled to an award for lost wages, a plaintiff must prove positively that he would have been earning the wages but for the accident in question. Boyette v. United Services Automobile Asso., 00-1918, p. 3 (La.04/03/01) 783 So.2d 1276, 1279. Some of the factors a court should consider when making an award for lost wages include the following: (1) plaintiff's physical condition before the accident, (2) plaintiff's work record before and after the accident, (3) amounts earned in previous years, (4) inflation, and (5) the probability that, except for the injury, the plaintiff would have earned similar wages the rest of his or her life. Brown v. Southern Baptist Hospital, 96-1990 (La.App. 4 Cir. 3/11/98), 715 So.2d 423, 432.
The trial court awarded Ms. Falgout lost income totaling $2,513. At trial, Ms. Falgout testified that she suffered injuries to her head and neck during the accident, which resulted in severe headaches for several months thereafter. She experienced nausea immediately after the accident. She was treated by Dr. Gorst Duplessis at the emergency room of St. Ann General Hospital in her hometown of Raceland, Louisiana, around midnight the *618 same day that the accident occurred, She later sought treatment from a Dr. Barrett J. Day at American Medical Therapy and from Dr. Maria Palmer. She testified that she underwent physical therapy "for quite a while."
The record contains an itemization of the dates Ms. Falgout missed work because of the accident on January 24, 1997, signed by her employer's payroll manager. According to that document, Ms. Falgout missed nine days of work during the weeks and months following the accident, for the loss of a total of $2,513 in wages. Because this evidences is sufficient to prove that Ms. Falgout suffered lost wages by a preponderance of the evidence, we find no abuse of the trial judge's discretion in his decision to deny the motion for involuntary dismissal of Ms. Falgout lost wages claim.

MITIGATION OF DAMAGES
Mr. Louis-Jeune claims that the trial judge should have reduced Ms. Falgout's damages because she failed to mitigate her damages, as required by Louisiana law. Louisiana's doctrine relative to mitigation of damages was explained by this court in Wilson v. Compass Dockside, Inc., 93-1860 (La.App. 4 Cir. 3/15/94), 635 So.2d 1171, as follows:
Louisiana law requires that an injured person exercise the diligence and care of an man of ordinary prudence to minimize his damages: Jacobs v. New Orleans Public Service, Inc., 432 So.2d 843, 845 (La.1983). "The burden rests with the wrongdoer to show that the victim of tortious conduct failed to mitigate damages. The tortfeasor must demonstrate (1) that the injured party's conduct after the accident was unreasonable and (2) that the unreasonable conduct had the consequence of aggravating the harm." Marathon Pipe Line Co. v. M/V Sea Level II, 806 F.2d 585, 592 (5th Cir. 1987), reh'g denied, 811 F.2d 602 (5th Cir.1987), reh'g denied, 811 F.2d 602 (5th Cir.1987).
Id. at 7, 635 So.2d at 1176.
In the instant case, Mr. Louis Juene claims that Ms. Falgout failed to mitigate damages by failing to follow her doctor's instructions relative to seeking physical therapy. However, Ms. Falgout's testimony at trial does not support Mr. Louis Falgout's contentions on this issue. Ms. Falgout never testified that she failed to do what her treating physicians advised. In fact, she stated that she followed the directions given by her physicians and that the headaches subsided. Moreover, she stated that she underwent physical therapy for "quite a while." Because the record contains no evidence indicating that Ms. Falgout's conduct after the accident was unreasonable or that her unreasonable conduct aggravated her condition, we find no error in the trial court's quantum award.

CONCLUSION
We reverse the trial judge's judgment to the extent it assigned no liability for the accident to Mr. Theriot, and amend the award to assign 40 percent liability to Mr. Theriot and 60 percent liability to Mr. Louis-Jeune. We further amend the judgment to reduce the damage awards to the Theriots by 40 percent to reflect Mr. Theriot's liability for the accident. In all other respects, we affirm the trial judge's judgment.[2]
*619 AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART; RENDERED.

ORDER

CONSIDERING THE FOLLOWING FACTS:
THAT the trial court assigned 100 percent of the liability for the accident that forms the basis of this appeal to the appellant, Frisnel Louis-Jeune;
THAT this court amended the trial court judgment to assign only 60 percent of the liability to Mr. Louis-Jeune, and 40 percent of the liability to appellee, David Theriot;
THAT the trial court failed to quantify Mr. Louis Jeune's damages;
IT IS HEREBY ORDERED THAT the case be remanded to the trial court for quantification of Mr. Louis-Jeune's damages.
NOTES
[1] We note that the only evidence on these issues was presented as part of the Theriots' case in chief, meaning that a finding that the trial court did not abuse his discretion in denying the motion for involuntary dismissal is equivalent to a finding that the trial court was not manifestly erroneous in entering the awards for the items of damages challenged.
[2] Although Mr. Louis-Jeune stated in the conclusion to his brief, and at the close of oral argument in this court, that he would be entitled to an award of damages if this court assigned any liability to Mr. Theriot, that issue is not raised as an assignment of error or briefed to this court. Accordingly, that issue is deemed abandoned, pursuant to Uniform Rules-Courts of Appeal, Rule 2-12.4.