NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-711


DAWN NOLEN

VERSUS

LOUISIANA FARM BUREAU
CASUALTY INSURANCE CO., ET AL.


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 2016-10090 I
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


**CANDYCE G. PERRET
JUDGE**


\*\*\*\*\*\*\*\*\*\*


Court composed of Sylvia R. Cooks, Billy Howard Ezell, and Candyce G. Perret, Judges.


**AFFIRMED.**


**Cooks, J., dissents in part and assigns written reasons.**

**Bart Bernard**
**Bart Bernard Law Firm**
**1031 Camellia Boulevard**
**Lafayette, LA 70508**
**(337) 989-2278**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Dawn Nolen**

**Aaron Broussard**
**Randall E. Hart**
**Steven Broussard**
**Broussard & Hart, LLC**
**1301 Common Street**
**Lake Charles, LA 70601**
**(337) 439-2450**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Dawn Nolen**

**Ian A. Macdonald**
**Jones Walker, LLP**
**600 Jefferson Street, Suite 1600**
**Lafayette, LA 70502-3408**
**(337) 593-7600**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Louisiana Farm Bureau Casualty Insurance Company**
     **Kerney Istre, Jr.**
     **Thibodeaux Brothers Farm**

**PERRET, Judge.**

Plaintiff, Dawn Nolen, filed suit against defendants, Kerney Istre, Thibodeaux Brothers Farm, and Louisiana Farm Bureau Casualty Insurance Company (collectively, "Defendants") following a motorcycle accident she had on January 29, 2015. Following a three-day jury trial, the jury returned a verdict finding Mr. Istre forty percent at fault for the underlying accident and Ms. Nolen sixty percent at fault. The jury then awarded $100,000 in general damages, $15,000 in past medical expenses, and $140,000 in future medical expenses. Ms. Nolen filed a motion for judgment notwithstanding the verdict ("JNOV"), or in the alternative, additur, which was denied by the trial court. For the following reasons, we affirm the jury verdict and the March 5, 2018 judgment denying the motion for JNOV.

**FACTS:**

On January 29, 2015, Mr. Istre was traveling east on Highway 90 in Midland, Louisiana in a 1999 International truck with an enclosed box trailer attached, owned by Thibodeaux Brothers Farm. Ms. Nolen was traveling behind Mr. Istre's truck on a 2012 Suzuki Boulevard motorcycle. According to Ms. Nolen, Mr. Istre gradually slowed down at the intersection of Highway 90 and Highway 91 and, because she did not see a turn signal being used, she attempted to pass him on the left. At that time, Mr. Istre made a left turn into a private driveway of a rice mill, and, in order to avoid a collision, Ms. Nolen also turned into the driveway. Ms. Nolen testified that "once [they] got into the driveway, something on the truck either clipped my bike or grabbed ahold of the handlebars of my bike. It knocked me off balance and slid the bike under the truck." Ms. Nolen testified that she "[f]ell to the ground" and landed in "the space between the back of the truck and the last axle of the trailer." Ms. Nolen testified that her toes on her right foot were

the only part of her body that came into contact with Mr. Istre's truck but that she didn't have any problems with her toes following the accident. As a result of the accident, Ms. Nolen's petition alleges she suffered injuries to her "back, neck, shoulders, arms, and whole body."

After a jury trial on October 23-25, 2017, the jury returned a verdict assessing forty percent at fault to Mr. Istre and sixty percent fault to Ms. Nolen. The jury awarded $50,000 in past and future physical and mental pain and suffering, $50,000 in future loss of enjoyment of life, $15,000 in past medical expenses, and $140,000 in future medical expenses. Thereafter, Ms. Nolen filed a motion for JNOV or, in the alternative, additur, which the trial court denied on March 5, 2018.

Ms. Nolen now appeals this judgment, alleging the following two assignments of error:

1. The jury reached a decision that was clearly wrong and the trial court erred in denying the motion for JNOV on the issue of liability, as Defendants presented no evidence Dawn [Ms. Nolen] was even 1% at fault.

2. The jury reached a decision that was clearly wrong and the trial court erred in denying the motion for JNOV on the issue of damages, as the general damages award is abusively low.

**STANDARD OF REVIEW:**

"The appellate jurisdiction of courts of appeal extend to both law and facts." *Arias v. Stolthaven New Orleans, L.L.C.*, 08-1111, p. 5 (La. 5/5/09), 9 So.3d 815, 818. In order for this court to reverse the factual findings of a jury, manifest error must exist. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Under a manifest error standard of review, this court can only reverse if it finds, based on the entire record, that there is no reasonable factual basis for the factual finding and that the

2

factfinder is clearly wrong. *Stobart v. State*, *Dep't of Trans. and Dev.*, 617 So.2d 880 (La.1993). As stated in *Rosell,* 549 So.2d at 844-45 (citations omitted):

> When findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

Thus, this court must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently. "The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses . . . but also upon the proper allocation of trial and appellate functions between the respective courts." *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973).

**DISCUSSION:**

The first issue to address is whether the trial court erred in denying Ms. Nolen's motion for JNOV on the issue of liability and whether the jury manifestly erred in assessing Ms. Nolen with sixty percent fault and Mr. Istre with forty percent of fault. Ms. Nolen argues that the jury's allocation of fault was contrary to the evidence and that it should have found Mr. Istre 100% at fault because he made a left turn across the center lane of traffic and there is no evidence that he used his blinker before turning. Conversely, Defendants argue that the jury could have reasonably concluded from the evidence that Ms. Nolen began her passing maneuver within an intersection and failed to take reasonable steps to avoid the

collision, and/or that she was an inexperienced motorcycle driver who lost control of her motorcycle while driving on the gravel driveway.

In *Joseph v. Broussard Rice Mill, Inc.*, 00-628, pp. 4-5 (La. 10/30/00), 772 So.2d 94, 99, the Louisiana Supreme Court discussed the use of JNOVs and the appellate standard of review to JNOVs, as follows:

> [Louisiana Code of Civil Procedure Article] 1811 controls the use of JNOV. Although the article does not specify the grounds on which a trial judge may grant a JNOV, in *Scott v. Hospital Serv. Dist. No.* 1, 496 So.2d 270 (La.1986), we set forth the criteria used in determining when a JNOV is proper. As enunciated in *Scott*, a JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. *Scott*, 496 So.2d at 274. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. *Anderson v. New Orleans Pub. Serv., Inc.*, 583 So.2d 829, 832 (La.1991). This rigorous standard is based upon the principle that "[w]hen there is a jury, the jury is the trier of fact." *Scott*, 496 So.2d at 273; *Jinks v. Wright*, 520 So.2d 792, 794 (La.App 3 Cir. 1987).

> In reviewing a JNOV, the appellate court must first determine if the trial judge erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable persons in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated. *Anderson*, 583 So.2d 832.

Further, "[t]he manifest error standard of review applies to the grant and/or denial of a motion for JNOV on the issue of damages as well as on the issue of liability."

*Darbone v. State*, 01-1196, p. 12 (La.App. 3 Cir. 2/6/02), 815 So.2d 943, 952, *writ denied*, 02-0732 (La. 5/31/02), 817 So.2d 94.

Louisiana Civil Code Article 2323 provides for apportionment of fault and states as follows (emphasis added):

> A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined . . . . If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

In *Watson v. State Farm Fire & Casualty Insurance Co.*, 469 So.2d 967, 974 (La.1985), the Louisiana Supreme Court adopted Section 2(b) of the Uniform Comparative Fault Act as guidelines for apportioning fault, which states:

> In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

An appellate court uses the manifestly erroneous or clearly wrong standard of review when reviewing a jury's finding of negligence and allocation of fault. *Brewer v. J.B. Hunt Transp., Inc.*, 09-1408 (La. 3/16/10), 35 So.3d 230. In this case, we find that there is evidence in the record to support the jury's findings that Ms. Nolen and Mr. Istre's actions contributed to the accident at issue.

"Louisiana jurisprudence holds that the left-turning motorist and the overtaking and passing motorist must exercise a high degree of care because they are engaged in dangerous maneuvers." *Kilpatrick v. All. Cas. & Reinsurance Co.*,

5

95-17, p. 4 (La.App. 3 Cir. 7/5/95), 663 So.2d 62, 66, *writ denied*, 95-2018 (La. 11/17/95), 664 So.2d 406. Pursuant to La.R.S. 32:104(B), Mr. Istre, the left-turning motorist, had a duty to signal his intent to turn and "such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning." Additionally, La.R.S. 32:104(C) provides that "[n]o person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal."

Ms. Nolan, as the driver of an overtaking or passing vehicle, had "the duty to ascertain before attempting to pass a preceding vehicle that from all the circumstances of traffic, lay of the land, and conditions of the roadway, the passing can be completed with safety." *Palmieri v. Frierson*, 288 So.2d 620, 623 (La.1974). Thus, "the driver of a following or overtaking vehicle must be alert to the actions of motorists preceding him on the highway." *Kilpatrick,* 663 So.2d at 66. Further, La.R.S. 32:76(A)(2) provides that "[n]o vehicle shall at any time be driven to the left side of the highway . . . when approaching within one hundred feet of or traversing any intersection or railroad grade crossing[.]"

In the instant case, the jury heard testimony from Mr. Istre that he had been driving eighteen-wheelers, hauling rice or beans, for the Thibodeaux Brothers for over twenty-one years. Mr. Istre testified that on the day of the accident, he slowed down at the intersection of Highway 90 and Highway 91, checked for overtaking or oncoming traffic, checked his mirrors, and slowly turned into the private driveway. When asked whether he activated his left turn signal before making the left turn, Mr. Istre testified as follows:

A. Yes, sir. I usually put them on.

Q. Do you remember if you did that on this day?

6

A.    No, sir.  I just don't remember.

Q.    Is that something you usually do?

A.    I usually do.  That's my common thing.

Q.    Is it second nature to you?

A.    Yes, sir.

Q.    When you were asked if you signaled, did you answer honestly that you didn't remember?

A.    I, honestly, didn't remember.

Mr. Istre further testified that he had no damage to his truck and that he was unaware that Ms. Nolen's bike had landed between his truck and trailer until one of the men loading the grain trucks told him.

The jury also heard testimony from Ms. Nolen that the motorcycle at issue was her first bike and that she had started riding motorcycles, alone, for about a year prior to this accident.  Ms. Nolen testified that on the day of the accident, she was following Mr. Istre for a couple of miles, traveling between fifty and fifty-five miles an hour, and that her motorcycle was about five or six car lengths behind Mr. Istre prior to him making the left turn.  Ms. Nolen testified that she was aware that Mr. Istre was driving a grain truck and that she could see Mr. Istre's trailer braking the closer he got to the private driveway leading to the grain warehouse, but that she thought he was "going to stop on the side."  At that time, Ms. Nolen testified that she decided to pass him on the left and that she "got halfway up his trailer and he suddenly decided to turn left."  Ms. Nolen testified that she "didn't have a choice but to turn [left] with him" and that she was trying to avoid the collision until "something on the truck either clipped my bike or grabbed ahold of the handlebars of my bike . . . and knocked [her] off balance[.]"

7

The jury also heard testimony from Dale Thibodeaux, the owner of the eighteen-wheeler and trailer that was driven by Mr. Istre, that the dimensions of Mr. Istre's vehicle "[f]rom the nose of the truck to the back end of the trailer" was "[a]round sixty feet[.]" Mr. Thibodeaux testified that he is also the owner of the rice warehouse and the private roadway where the alleged accident occurred and that the distance from the intersection at issue [Highways 90 and 91] and the shell driveway was "[a]bout a hundred twenty feet[.]"

Applying the *Watson* factors to Ms. Nolen's actions in the instance case, we find that the jury could reasonably conclude that Ms. Nolen began her passing of Mr. Istre's eighteen-wheeler while traversing the intersection of Highway 90 and Highway 91 and that she failed to take reasonable steps to avoid the accident, especially considering the fact that Ms. Nolen's bike merely landed between Mr. Istre's truck and the last axle of his trailer. Again, whether Ms. Nolen was contributorily negligent depends largely on the credibility of the witnesses, and under these particular facts, we cannot say the jury was clearly wrong in assigning sixty percent of the fault to Ms. Nolen. Accordingly, we cannot say that the trial court committed manifest error in denying Ms. Nolen's motion for JNOV on the issue of liability.

In her second assignment of error, Ms. Nolen argues that the trial court erred in denying her motion for JNOV on the issue of damages and that the jury abused its discretion in assessing $100,000 in past and future general damages despite the fact that she will undergo two future neck surgeries.

The Louisiana Supreme Court, in *Duncan v. Kansas City Southern Railway Co.*, 00-66, p. 13 (La. 10/30/00), 773 So.2d 670, 682 (citations omitted) defined general damages as "those which may not be fixed with pecuniary exactitude;" and "involve mental or physical pain or suffering, inconvenience, the loss of

8

intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms." "Vast discretion is accorded the trier of fact in fixing general damage awards." *Id.* A trial court's findings on the amount of general damages is reviewed for abuse of discretion and "[i]t is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." *Youn v. Maritime Overseas Corp*., 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994).

Although the jury awarded $140,000 in future medical expenses, we find that the record supports the jury's award of $100,000 in general damages. In *Wainwright v. Fontenot*, 00-0492, p. 8 (La. 10/17/00), 774 So.2d 70, 76, the supreme court held that "a jury, in the exercise of its discretion as factfinder, can reasonably reach the conclusion that a plaintiff has proven his entitlement to recovery of certain medical costs, yet failed to prove that he endured compensable pain and suffering as a result of defendant's fault." Ms. Nolen testified that as a result of the accident, she visited the emergency room with complaints of a bruise on her left shoulder, an abrasion on her left elbow, and a burn on her right calf. Other than her emergency room visit on the day of the accident, Ms. Nolen did not seek treatment of any kind until February 23, 2015, when she visited Dr. Keith Mack with complaints of neck pain and headaches. After receiving several weeks of physical therapy, Ms. Nolen testified that she was released from Dr. Mack's care on June 11, 2015, and was able to continue with her pre-accident activities, including motorcycle rides, taking care of her family, and gardening. Dr. Mack's medical notes from June 11, 2015, state that "her [Ms. Nolen's] neck and back no longer bother her" and that "she has gone about a month without any significant

9

discomfort." Dr. Mack's physical examination of the cervical and thoracic spine from that day revealed "a full range of motion in all areas with no residual pain, soreness, stiffness, or tenderness to direct palpation or with movement." Although Ms. Nolen returned to Dr. Mack on November 5, 2015, "reporting that her neck and headaches have returned" she continued with all of her pre-accident activities. Based on the testimony in the record regarding the severity and extent of Ms. Nolen's pain and suffering, we do not find that the jury abused its great discretion in awarding $100,000 in general damages. Accordingly, we cannot say that the trial court committed manifest error in denying Ms. Nolen's motion for JNOV on the issue of damages.

For these reasons, we affirm the November 15, 2017 trial court judgment that allocated forty percent fault to Mr. Istre and sixty percent fault to Ms. Nolen and its award of $100,000 in general damages, $15,000 in past medical expenses, and $140,000 in future medical expenses, to be reduced accordingly. The March 5, 2018 judgment denying the motion for JNOV is also affirmed. All costs of this appeal are to be assessed against Ms. Nolen.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.

10

DAWN NOLEN

VERSUS

LOUISIANA FARM BUREAU CASUALTY
INSURANCE CO., ET AL

**COOKS, J., dissenting in part.**

I dissent from the portion of the majority opinion affirming the jury's apportionment of fault. I find the record conclusively establishes the accident occurred after the vehicles passed the intersection. Mr. Istre, as the left-turning motorist, had a more heightened duty of care than plaintiff and should have been cast with the majority of fault in this case.

I emphasize my position rests solely on the legal duty imposed on left-turning motorists under La.R.S. 32:104. In my view this is not a manifest error case, but, rather, the jury's incorrect assessment of the respective drivers' legal burdens under the law. Even if we accept the Defendants' version of facts that the Plaintiff began her passing maneuver in the intersection, it does not change the uncontroverted fact that the accident occurred ***after the intersection.*** Thus, the left turning motorist's burden under the law was greater. Mr. Istre's failure to look in his mirror prior to turning, and his failure to activate his blinker were the primary causes of this accident. Mr. Istre only testified he could not recall if he activated his blinker. This is insufficient to negate Plaintiff's positive testimony that he did not activate his blinker. The jury's failure then to assess a greater percentage of fault to the Defendant driver was **legally** incorrect and must be reversed.

I also find no merit in the argument Defendants presented to the jury that plaintiff should have known Mr. Istre would be turning because he was driving a

rice truck and there was a rice mill nearby.  This has no bearing whatsoever on the respective duties of either driver under the law.  I also find nothing relevant about the plaintiff's relative inexperience driving motorcycles.  The law does not have different standards for experienced drivers as opposed to inexperienced drivers.  These were just attempts by Defendants to cloud the issue before the jury.

For the reasons above, I dissent from the portion of the opinion casting plaintiff with a greater portion of the fault.  I believe the lowest apportionment of fault that should be cast against Mr. Istre for his failure to comply with his duties as a left-turning motorist under La.R.S. 32:104 is seventy-five percent (75%).