STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


05-429


JOSEPH MORAUS

VERSUS

JENNIFER H. FREDERICK, ET AL.


************


APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2003-5445-A
HONORABLE MARK JEANSONNE, DISTRICT JUDGE


************


JAMES T. GENOVESE
JUDGE


************


Court composed of Glenn B. Gremillion, J. David Painter, and James T. Genovese, Judges.


AFFIRMED IN PART AS AMENDED;
REVERSED IN PART; AND RENDERED.


Paul D. Oberle, Jr.
1800 Creswell Avenue
Shreveport, Louisiana 71134
COUNSEL FOR DEFENDANT/APPELLANT:
      Imperial Fire & Casualty Insurance Company

John T. Bennett
Post Office Box 275
Marksville, Louisiana 71351
COUNSEL FOR PLAINTIFF/APPELLEE:
      Joseph Moraus

**GENOVESE, Judge.**

This is an automobile accident case where the Defendant UM carrier appeals the trial court's judgment finding the Plaintiff only 20% at fault. Plaintiff answered the appeal seeking additional attorney's fees as damages for a frivolous appeal. We amend the trial court's allocation of fault, reduce the future general and special damage awards, and deny the Plaintiff's request for damages for frivolous appeal.

## FACTS

This suit arises out of a motor vehicle accident which occurred on July 2, 2003, in Ascension Parish. The accident occurred on U.S. Highway 61, also known as Airline Highway, which is a four-lane roadway with two lanes of travel each for vehicles traveling north and south and a grassy median dividing the north and southbound lanes. Immediately before the accident, Plaintiff, Joseph Moraus ("Moraus"), was proceeding north on Airline Highway and decided to execute a "u-turn" from the northbound lanes at a designated crossover. Defendant, Jennifer Frederic ("Frederic"),[1] was proceeding in a southerly direction on Airline Highway when Moraus crossed the inside southbound lane and turned left into the outside southbound lane. Either immediately or soon thereafter, which is not apparent from the record, Moraus allegedly attempted to merge left into the inside southbound lane. The physical evidence indicates that the right side of Frederic's vehicle collided with the left side of Moraus' vehicle.

As a result of this accident, Moraus, a domiciliary of Avoyelles, filed this personal injury suit against Frederic and her liability insurer, State Farm Mutual Automobile Insurance Company ("State Farm"), and also his uninsured/underinsured ("UM") motorist carrier, Imperial Fire and Casualty Insurance Company ("Imperial").

---

[1]Incorrectly spelled "Frederick" throughout the pleadings and the record.

1

Prior to trial, Moraus settled with Frederic and State Farm, thereby leaving only his UM claim against Imperial.

On December 15, 2004, the unresolved UM claim was tried before the court pursuant to bench trial. In order to expedite the proceedings, counsel for the parties submitted into the record the accident report, all medical records, the deposition testimony of Moraus and Frederic, insurance documentation, and stipulated to Moraus' medical bills in the amount of $3,828.04. In oral reasons for judgment, the trial court found Frederic 80% at fault and Moraus 20% at fault in causing the accident. Moraus was awarded damages for past and future medical expenses, past and future pain and suffering, legal interest from the date of judicial demand, court costs and deposition fees.

Imperial appeals the "80-20" allocation of fault and the total amount of $50,328.00 in general and special damages as being excessive for a soft tissue injury. Moraus answered the appeal to assert that he is entitled to damages for Imperial's filing of a frivolous appeal.

### ISSUES

The issues before us are:

(1)    whether the trial court erred in the assessment of fault between Moraus and Frederic;

(2)    whether the trial court abused its discretion in awarding a total of $50,328.00 in damages for Moraus' injuries; and

(3)    whether this appeal is frivolous entitling Appellee/Moraus to damages pursuant to La.Code Civ. P. art. 2164.

### LAW AND DISCUSSION

#### *Allocation of Fault*

Imperial contends that the trial court was manifestly erroneous in its assessment of only 20% fault to the Plaintiff. It argues that Moraus drove his vehicle from an

2

inferior position on the roadway directly and inexplicably into the path of an oncoming vehicle without first determining that such a maneuver could be accomplished in a safe manner. The record is replete with contradictory testimony.

In his deposition, Moraus states the accident occurred as he was traveling north on Airline Highway en route to a grocery store and realized that he had forgotten his money. He decided to turn around. He entered the median in order to execute a u-turn into the southbound lanes. After stopping at a designated crossover, he then proceeded to crossover into the outside southbound lane. While stopped at the crossover, Moraus stated that he saw Frederic's truck approaching in the outside lane at a distance of approximately 200 to 300 yards away. Moraus testified that even though he saw no approaching traffic in the inside southbound lane, he crossed the inside lane and traveled into the outside southbound lane in front of Frederic's truck. Moraus stated that he observed in his rear view mirror that Frederic's truck was coming up "fast" behind him so he signaled left and then began to merge into the inside lane. Moraus testified that about a hundred fifty yards after turning onto Airline Highway and heading south, Frederic's truck hit the back of his vehicle, thereby damaging the whole left side. He testified that the collision occurred in the left hand southbound lane.

In her deposition, Frederic states that the accident occurred as she was on her way to her son's daycare. She turned right off Old Perkins Road into the southbound inside lane of Airline Highway. Frederic stated she immediately saw Moraus' vehicle as it came to a stop at the crossover approximately three to four car lengths ahead. She testified she was traveling between forth-five and fifty-five miles per hour. Frederic stated that after four or five seconds Moraus drove forward, crossed over both the inside and outside lanes, drove onto the shoulder, and then turned and drove

3

his truck back towards the inside lane of travel. Frederic testified that the front right side of her truck was struck by the front left side of Moraus' truck, thereby pushing her vehicle into the median as a result of the collision.

The State of Louisiana Uniform Motor Vehicle Traffic Crash Report, admitted into evidence by stipulation of the parties, contains a drawing which purportedly shows the point of impact as being just right of the center line, at the westernmost part of the outside lane.

Louisiana Revised Statute 32:73 sets forth the duties of a motorist overtaking and passing a vehicle traveling in the same direction as follows:

> (1) Except when overtaking and passing on the right is permitted, the driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance, and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.

> (2) Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal, and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle.

Louisiana Revised Statute 32:79 creates a duty for a driver to refrain from switching traffic lanes until it has first been ascertained that such movement can be safely made. The record and evidence clearly shows that Moraus breached this duty.

We find that the trial court erred in allocating only 20% fault to Moraus for this accident. We must adjust the allocation of fault giving deference to the trial court's allocation of fault. *Clement v. Frey*, 95-1119, 95-1163 (La. 1/16/96), 666 So.2d 607.

This court, in *Budget Rent-A-Car of New Orleans v. Gradnigo*, 611 So.2d 147, 151 (La.App. 3 Cir. 1992) (citing *Walton v. Bellard*, 581 So.2d 307 (La.App. 1 Cir. 1991), *writ denied* 585 So.2d 567 (La.1991)), discusses the allocation of fault as follows:

> "It is well settled that the allocation of comparative negligence is

4

a factual matter, and such determination will not be disturbed on appeal unless it is clearly wrong or manifestly erroneous. *Varnado v. Continental Insurance Company*, 446 So.2d 1343, 1345 (La.App. 1st Cir. 1984). . . ."

In an action for injury or loss, the trier of fact shall determine the degree or percentage of fault of all persons found to have contributed or caused that injury or loss. La.Civ.Code art. 2323. When apportioning fault, the factfinder should consider the five factors enunciated in *Watson v. State Farm Fire & Casualty Insurance Co.*, 469 So.2d 967 (La.1985), which include: "(1) whether the conduct resulted from inadvertence or involved an awareness of danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought." *Id.* at 974.

It is obvious that the trial court gave greater weight to the deposition testimony of Moraus as to how this accident occurred. The court even opines and superimposes its own assessment of how the accident happened, adopting for the most part the sequence of events as described by Moraus. In fact, even though Moraus testified one way, the trial court obviously interpreted it another.

In its oral reasons for judgment, the trial court proclaimed:

> Mr. Moraus testified that he made a legal u-turn on that highway, Highway 61, and then was proceeding thereafter the same direction as the defendant, the other driver, Ms. Frederick [sic]. He indicated that he saw her vehicle coming but it was a long ways off and he took what he described as the outside lane. He did indicate he noticed she was coming pretty fast and that he switched over and that she did the same thing at the same time and she ran into him. He indicated that he switched over and I think what he meant and his abilities are probably somewhat limited. *I think obviously but he intended to switch over whether he actually switched over or not, I don't think he did because of the impact but he intended to switch over.* (Emphasis added).

Moraus' deposition testimony reveals that he did establish his position in the inside

5

lane of Airline Highway South when the collision occurred.

BY DEFENSE COUNSEL: When you left the median, you went directly to the outside lane. . .

BY MR. MORAUS: Yes, sir.

Q.      . . . without ever really driving in the inside lane?

A.      No, sir. I went to the - - well, I had to cross the inside lane to get to the outside lane.

Q.      Right. You just crossed it, but you didn't actually travel in it, is that. . .

A.      No, sir. Until I seen her coming at a high rate of speed, then I switched over.

Q.      Tell me why you switched from the outside to the inside?

A.      Because she was coming fast. When I came to a complete stop, she was a long ways off and I couldn't tell she was coming that fast and she switched over the same time I guess.

Q.      Did you see the two vehicles make contact with one another?

A.      No sir, I couldn't see it.

Q.      Where were you looking?

A.      I was looking straight ahead.

Q.      Were you completely within the inside lane of travel when the collision occurred?

A.      Yes sir, I established my lane.

Frederic testifies she was never in the outside lane as Moraus alleges. However, even if Frederic were in the outside lane and then proceeded to the inside lane to overtake Moraus, we find Moraus at fault for switching of lanes after observing Frederic approaching "fast." Both Moraus and Frederic testified to be going approximately forty-five to fifty-five miles per hour. The State of Louisiana Uniform Motor Vehicle Traffic Crash Report indicates that the speed zone on Airline

6

Highway where this collision occurred is sixty-five miles per hour. Without any additional proof in the record that Frederic was driving at an excessive rate of speed, that allegation is unproven. Louisiana Revised Statutes 32:71, 32:73, and 32:79 require slower vehicles to yield the inside lane to faster traffic and also require that a motorist not switch lanes unless safe to do so.

We find that the trial court erred in assessing only 20% of the fault of this accident to Moraus. It was manifest error and clearly wrong in not finding that Moraus had a higher degree of fault when he admitted to proceeding across an empty lane of travel into an occupied lane, and switching traffic lanes without first fully ascertaining that such movement could be made safely. Therefore, we find the lowest reasonable amount of fault that could be assessed to Moraus to be 50%.

### *Quantum*

Imperial next contends that the trial court's award of damages is excessive. The trial court awarded Moraus $43,000.00 for pain and suffering, $3,000.00 for future pain and suffering, $3,328.04 for special damages, and $1,000.00 for future specials.

### *Past and Future General Damages, Past Special Damages*

The Louisiana Supreme Court explained the standard of review of general damage awards in *Duncan v. Kansas City Southern Railway Co.*, 00-66, pp. 13-14 (La. 10/30/00), 773 So.2d 670, 682-83, *cert. denied*, 532 U.S. 992, 121 S.Ct. 1651 (2001), as follows:

> General damages are those which may not be fixed with pecuniary exactitude; instead, they "involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms." *Keeth v. Dept. of Pub. Safety & Transp.*, 618 So.2d 1154, 1160 (La.App. 2 Cir.1993). Vast discretion is accorded the trier of fact in fixing general damage awards. La. Civ.Code art. 2324.1; *Hollenbeck v. Oceaneering Int., Inc.*, 96-0377, p. 13 (La.App.

7

1 Cir. 11/8/96); 685 So.2d 163, 172. This vast discretion is such that an appellate court should rarely disturb an award of general damages. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. *Youn*, 623 So.2d at 1260. As we explained in *Youn*:

> Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award.

> *Id.* at 1261.

The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. *Cone v. National Emergency Serv. Inc.*, 99-0934 (La.10/29/99), 747 So.2d 1085, 1089; *Reck v. Stevens*, 373 So.2d 498 (La.1979). Only after a determination that the trier of fact has abused its "much discretion" is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Coco v. Winston Indus., Inc.*, 341 So.2d 332 (La.1976).

In the present case, the trial court found that the testimony and medical records supported the finding that the accident in this case caused injuries to Moraus' upper left arm, left shoulder and neck. The trial court found that Moraus' medical treatment was consistent with his injuries. Moraus sought treatment from July of 2003 to November of 2004. The trial court broke down it's damage award as follows: $3,500.00 per month for the first two months; $2,500.00 per month for September 2003 through September 2004; and $1,000.00 per month for October, November and December of 2004 (through date of trial).

Imperial contends that the trial court's award is clearly unreasonable as it averages out to be a $2,625.00 per month award for a soft tissue injury for which Moraus allegedly received only conservative treatment. Moraus was consistent in his

8

treatment and is observed by the trial court not to be a malingerer.

Having reviewed the record in this case, including Moraus' testimony and the medical records presented, we find no basis to disturb the trial court's award for past and future general damages.

*Future Special Damages*

This court discussed the burden of proof required to support an award for future medical expenses in *Veazey v. State Farm Mutual Auto Insurance*, 587 So.2d 5, 8 (La.App. 3 Cir. 1991) (citations omitted) as follows:

> Future medical expenses, like any other damages, must be established with some degree of certainty. The plaintiff must show that, more probably than not, these expenses will be incurred. Awards will not be made in the absence of medical testimony that they are indicated and setting out their probable cost. An award for future medical expenses cannot be based on mere speculation of the jury. Much stronger proof, such as medical testimony of the specific expenses to arise, should be required for such an award.

There is no medical evidence in the record of Moraus' need for future medical treatment. We find that the trial court erred in awarding "future specials in the amount of $1,000.00." Thus, we reverse the trial court's judgment in regards to this award.

After reviewing the record, we find no medical evidence supporting an award for Moraus' future medical expenses.

**Frivolous Appeal**

Finally, Moraus claims "this appeal seems to be more of a delay tactic in paying than it is an appeal based on any merit." He claims that he is entitled to damages for frivolous appeal.

Louisiana Code of Civil Procedure Article 2164 provides for an award of damages for frivolous appeal. If the court feels that counsel for the appellant does not seriously advocate the position taken or that the appeal was filed solely for dilatory

9

purposes, then damages for frivolous appeal are appropriate. *Gallien v. Winn-Dixie*, 96-832 (La.App. 3 Cir. 12/11/96), 685 So.2d 531 (citing *Hampton v. Greenfield*, 618 So.2d 859 (La.1993)); *Doe v. Roman Catholic Church*, 94-1476 (La.App. 3 Cir. 5/3/95), 656 So.2d 5, *writ denied*, 95-2076 (La. 11/13/95), 662 So.2d 478. However, if even the slightest justification is found for the appeal, and even if the appellant does not prevail on appeal, damages will not be awarded. *Hawkins v. City of Jennings*, 97-1291 (La.App. 3 Cir. 3/6/98), 709 So.2d 292.

We do not find this appeal to be frivolous. Neither the record nor the briefs indicate that counsel for Imperial does not seriously advocate the position taken, or that this appeal was filed as a dilatory tactic. There were genuine issues presented in this appeal. Thus, we deny Moraus' request for damages for frivolous appeal.

## DECREE

For the foregoing reasons, we amend the judgment of the trial court to increase the allocation of fault of Joseph Moraus to 50%, and to reduce the allocation of fault of Jennifer Frederick to 50%. We affirm the trial court's awards for past special damages and for past and future general damages. We reverse the award for future special damages as not legally proven. Further, we deny Plaintiff's request for damages for frivolous appeal. Costs of this appeal are assessed 50% against the Plaintiff, Joseph Moraus, and 50% against the Defendant, Imperial Fire and Casualty Insurance Company.

**AFFIRMED IN PART AS AMENDED; REVERSED IN PART; AND RENDERED.**