# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 05-1482


**TIMOTHY TRAHAN, ET AL.**

**VERSUS**

**DOUGLAS DEVILLE, ET AL.**


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2002-1007
HONORABLE PATRICK LOUIS MICHOT, DISTRICT JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of John D. Saunders, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

**REVERSED.**

**Gwendolyn Marie Hanhart**
**Gerard G. Metzger, APLC**
**829 Baronne St.**
**New Orleans, LA 70113**
**(504) 581-9322**
**Counsel for Defendants/Appellees:**
**Zurich American Insurance Company**
**Safelite Glass Corporation**
**Douglas Deville**

**Sue Fontenot**
**Attorney at Law**
**400 S. State St.**
**Abbeville, LA 70510**
**(337) 893-8104**
**Counsel for Plaintiffs/Appellants:**
**Shawn M. Trahan**
**Timothy Trahan**

**James Paul Lambert**
**Attorney at Law**
**P. O. Box 53083**
**Lafayette, LA 70505-3083**
**(337) 261-3737**
**Counsel for Plaintiffs/Appellees:**
**Timothy Ryan Trahan**
**Shawn M. Trahan**
**Krista Trahan**
**Timothy Trahan**

**Kenny Layne Oliver**
**Oliver & Way**
**P. O. Box 80655**
**Lafayette, LA 70598-0655**
**(337) 235-2112**
**Counsel for Secondary Defendant/Appellant:**
**State Farm Mutual Automobile Insurance Company**

**W. Corey Grimley**
**Bryan David Scofield**
**Wendell Robert Verret**
**Daigle, Scofield & Rivera**
**P. O. Box 3667**
**Lafayette, LA 70502-3667**
**(337) 234-7000**
**Counsel for Defendants/Appellees:**
**Safelite Glass Corp.**
**Douglas Deville**
**Zurich American Insurance Company**
**D.L. Peterson Trust**

**Kevin Reeve Duck**
**Duck Law Firm**
**P. O. Box 2967**
**Lafayette, LA 70502-2967**
**(337) 269-8850**
**Counsel for Plaintiffs/Appellees:**
**Krista Trahan**
**Timothy Ryan Trahan**

**David Oliver Way**
**Attorney at Law**
**P. O. Box 80655**
**Lafayette, LA 70598-0655**
**(337) 235-2112**
**Counsel for Secondary Defendant/Appellant:**
**State Farm Mutual Automobile Insurance Company**

**SAUNDERS, Judge.**

This litigation arises from an automobile accident wherein a motorist noticed that he was being passed after commencing a left turn. The passing vehicle swerved to avoid a collision, ran into a mailbox, and plaintiff allegedly suffered injuries as a result. A jury trial was held and a verdict was returned in favor of defendant. Plaintiffs appealed. We reverse.

**FACTS AND PROCEDURAL HISTORY**

On April 18, 2001, Shawn Trahan attempted to pass the vehicle driven by Douglas Deville while driving her vehicle northbound on Chemin Metairie Road. While in the process of making a left turn into the private driveway at 428 Chemin Metairie, Mr. Deville noticed Ms. Trahan in the left lane making her passing maneuver and stopped his turn. Ms. Trahan swerved to avoid a collision, struck a mailbox, spun around and eventually came to a stop facing the wrong direction on the roadway. The vehicles were removed from the roadway and Lafayette Parish Sheriff's Deputy Brian James Dugal investigated the accident. Because the cars were moved, Deputy Dugal had to rely on interviews to reconstruct the accident.

Ms. Trahan stated that Mr. Deville did not have his blinker on indicating a left turn and Deputy Dugal's report makes no mention of the fact that Mr. Deville claimed to have used his blinker. Furthermore, Mr. Deville stated that his rearview mirror was blocked by a camper, that he never looked in his side mirrors, and never saw Ms. Trahan until she was alongside him. Deputy Dugal noted that there were no visible legal impediments to Ms. Trahan's passing maneuver and the road was marked with a dashed yellow line indicating that passing was allowed. A jury trial was held and the trial judge instructed the jury that "a passing motorist may not pass another motorist on the left within one hundred feet of any intersection." The jury returned

a verdict in favor of Mr. Deville and plaintiffs appeal. State Farm Mutual Insurance Company, insurer of Ms. Trahan's vehicle, also appeals assigning the same errors as Ms. Trahan.

**ASSIGNMENTS OF ERROR**

1) The jury's verdict that Defendant/Appellee, Douglas Deville, was not negligent in making a left turn into a private driveway is "clearly wrong" and constitutes "manifest error" where he admitted at trial that he breached the legal duties imposed upon him as a left-turning motorist.

2) The trial court erred in charging the jury that "a passing motorist may not pass another motorist on the left within one hundred feet of any intersection."

**STANDARD OF REVIEW**

Findings of the trial court are reviewable on appeal, and the appellate standard of review has been clearly established. A trial judge's findings of fact will not be disturbed unless they are manifestly erroneous or clearly wrong. *Stobart v. State, through Dep't of Transp. & Dev.,* 617 So.2d 880 (La.1993). This standard, however, is not applicable when one or more legal errors by the trial court interdicts the fact-finding process, and, when permitted by the record, the appellate court should conduct a de novo review to determine the preponderance of the evidence. *Evans v. Lungrin,* 97-0541 (La. 2/6/98), 708 So.2d 731. Legal errors occur when trial courts prejudicially apply incorrect principles of law. *Id*. These errors are prejudicial when they materially affect the outcome of the matter. *Id*. In these cases, appellate courts are bound, if possible, to apply the correct principles of law, determine material facts, and render judgment on the record. *Id*.

2

**DISCUSSION**

We will first address the issue regarding the jury instruction because our resolution of that issue pretermits appellants' other assignment of error. Appellants argue that the trial court erred by instructing the jury that "a passing motorist may not pass another motorist on the left within one hundred feet of any intersection." We agree. The statute upon which the trial court based its instruction provides in pertinant part that:

> A. No vehicle shall at any time be driven to the left side of the highway under the following conditions:
>
> . . . .
>
> (2) when approaching within one hundred feet of or traversing any intersection or railroad grade crossing;
>
> . . . .
>
> B. **The foregoing limitations shall not apply upon** a one-way roadway or a multiple lane highway nor to the driver of a vehicle turning left into or from an alley, private road or **driveway**.

La.R.S. 32:76. [Emphasis added]. A highway is defined as "the entire width between the boundary lines of every way or place of whatever nature **publicly maintained** and open to the use of the public for the purpose of vehicular travel, including bridges, causeways, tunnels and ferries; synonymous with the word "street."" La.R.S. 32:1. [Emphasis added]. Furthermore, the same statute defines an intersection as:

> (a) The area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict.
>
> (b) Where a highway includes two highways thirty feet or

3

more apart, then every crossing of each highway of such divided highway by an intersecting highway shall be regarded as a separate intersection. In the event such intersecting highway also includes two highways thirty feet or more apart, then every crossing of two highways of such highways shall be regarded as a separate intersection.

(c) **The junction of an alley with a street or highway shall not constitute an intersection**.

*Id*. [Emphasis added]. Based upon these provisions, it is evident that the junction between a private driveway and a public roadway is not an intersection.

Appellee, however, argues that the accident occurred at an intersection because there is a roadway approaching from the right of Chemin Metairie, on the opposite side of the road from the accident site. This argument is unpersuasive. First, we note that the turning vehicle was in the process of entering a private driveway, not another public roadway which would indicate the presence of an intersection. The accident occurred at the junction of a private drive and a public roadway, which is not an intersection according to the above quoted statutes. Second, the roadway at the accident site was marked with a dashed yellow line meaning the area was a legal passing zone. Motorists must be allowed to rely upon traffic markings such as these when operating their vehicles. Finally, Deputy Dugal testified that there were no legal impediments to Ms. Trahan's passing maneuver and that she was well within her rights in executing the maneuver. We have not been able to locate a statutory or jurisprudential provision in contradiction of this conclusion.

Having determined that the instruction was given in error, we must now determine whether the error probably contributed to the verdict. *Nicholas v. Allstate Ins. Co.*, 99-2522 (La. 8/31/00), 765 So.2d 1017. Our duty in this regard requires us to determine "whether the jury instructions misled the jury to the extent that it was

4

prevented from dispensing justice." *Id*. at 1023. Given that the jury found Ms. Trahan to be completely at fault, we must conclude that they relied heavily upon the instruction at issue here. The is no evidence indicating that Mr. Deville used his left turn signal before executing his turn. He also testified that one of his mirrors was blocked and he did not check the others for oncoming vehicles before commencing the turn. The only way that the jury could excuse Mr. Deville's failure to use his turn signal or mirrors is by relying upon the inappropriate jury instruction. In other words, for Ms. Trahan to be found completely at fault in light of this evidence, one must conclude that the jury relied primarily, if not entirely, upon the trial court's erroneous instruction regarding passing near an intersection. The instruction effectively precluded a finding of fault on the part of Mr. Deville by stating that, regardless of other circumstances, Ms. Trahan illegally executed a passing maneuver within one hundred feet of an intersection. Given the evidence of record, this is the only logical conclusion for the jury's verdict. Accordingly, we must conduct a de novo review of the record.

Initially, we note that the duty imposed upon a left turning motorist is high. A left turning motorist must signal the turn continuously for a minimum of 100 feet before the turn. La.R.S. 32:104. Even using the turn signal as provided by law does not satisfy the duty of the motorist if the turn cannot be made safely. *Kilpatrick v. Alliance Cas. Reinsurance*, 95-17 (La.App. 3 Cir. 7/5/95), 663 So.2d 62, *writ denied*, 95-2018 (La. 11/17/95), 664 So.2d 406. Indeed, the supreme court held that failing to check the rearview mirror a second time even after observing another vehicle approaching from the rear is a dereliction of this duty. *Gaspard v. LeMaire*, 158 So.2d 149 (La.1963). Accordingly, it is clear that the duty upon a left turning

5

motorist is two-fold. First, he must signal his turn for at least 100 feet prior to making the turn. La.R.S. 32:104. Second, he must carefully examine the conditions around him to determine whether the turn can be made safely. *Kilpatrick*, 663 So.2d 62. As previously noted, there is no evidence whatsoever that Mr. Deville used his turn signals. He also testified that he could not see out of his rearview mirror and never checked his side mirrors before making his turn. In light of these facts, the significant duty imposed upon a left turning motorist, and our finding that Ms. Trahan executed a legal pass, we must conclude that Mr. Deville's actions were the legal cause of the accident. Moreover, since there is no fault shown on the part of Ms. Trahan, we must conclude that Mr. Deville is entirely at fault for this accident.

We now turn our attention to the issue of damages. Following the accident, Ms. Trahan experienced neck and back pain at work which caused her to seek medical attention. She underwent massage therapy and chiropractic treatment for her back pain. Ms. Trahan also, however, suffered from severe headaches, stating that one lasted for nearly an entire week. When her physicians were unable to alleviate the headaches, they terminated her physical therapy. Ms. Trahan was eventually transferred to Dr. Heard, an orthopedic physician, when others were unable to remedy her problems. He found Ms. Trahan to be sincere. He also concluded that she is experiencing chronic pain for which there was no surgical solution. Dr. Heard's treatment consisted of spinal injections, bone scans, nuclear testing, x-rays, MRI's, nerve testing and physical therapy over a period of several months. The costs of these past medical expenses is $22,938.45. We award same to Ms. Trahan for past medical expenses.

Both Ms. Trahan's professional and recreational activities have been limited due to the ongoing pain. She has always enjoyed the outdoors. She particularly enjoys fishing, crabbing, hunting and cast netting. In addition to these recreational physical activities, she painted commercial and residential properties for a living. These activities have been limited since the accident and, according to Dr. Heard, will continue to be limited for the foreseeable future, if not forever. Given her enjoyment of physical activities and the apparent limitations thereon, we find that an award of $75,000.00 for general damages is warranted.

Plaintiff also seeks an award for future medical expenses. Future medical expenses is an element of special damages that must be proven by a preponderance of the evidence. *Iwamoto v. Wilcox*, 04-1592 (La.App. 3 Cir. 4/6/05), 900 So.2d 1047, *writ denied*, 05-1624 (La. 1/9/06), 918 So.2d 1050. To satisfy this burden, "the plaintiff must show that, more probably than not, these expenses will be incurred and must present medical testimony that they are indicated and the probable cost of these expenses." *Cormier v. Colston*, 05-507 (La.App. 3 Cir. 12/30/05), 981 So.2d 541, 547. In support of their request for an award of future medical expenses, plaintiffs offered the testimony of Dr. Heard. He anticipates Ms. Trahan's physical pain and limitations to continue indefinately, if not forever. He testified that the cost of the medication used to treat Ms. Trahan's pain is approximately $4,800.00 per year and that she will face $1,500.00 to $2,000.00 per year in doctor's visits. Plaintiff argues that these calculations, applied over Ms. Trahan's projected life expectancy of 52 years, support an award for future medical expenses in excess of $300,000.00. Dr. Heard's conclusion, however, is based upon Ms. Trahan's subjective complaints of pain. These subjective complaints, however, are not adequate to support the award

7

requested by plaintiff in the absence of more definitive objective medical findings. Our review of the record indicates that, while permanent pain or discomfort is not supported by objective medical findings, short term treatment will be required for Ms. Trahan's condition. Accordingly, we find that an award of $10,000.00 for future medical expenses is warranted.

Ms. Trahan's injury has also affected her husband. She becomes irritable due to her pain, adversely effecting the family's home environment. Mr. Trahan is also unable to share many of the recreational activities he and his wife enjoy in the same manner as before the accident. We find that an award of $15,000.00 for loss of consortium is warranted for Mr. Trahan's claim.

**CONCLUSION**

The judgment of the trial court is reversed. Ms. Trahan is awarded $75,000.00 in general damages, $22,938.45 in past medical expenses, and $10,000.00 in future medical expenses. Mr. Trahan is awarded $15,000.00 for loss of consortium.

**REVERSED.**