STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-395


GILES HILL

VERSUS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2017-6842
HONORABLE JULES D. EDWARDS, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and
D. Kent Savoie, Judges.


AFFIRMED AS AMENDED.

David O. Way
Kenny L. Oliver
Oliver & Way, L.L.C.
Post Office Box 82447
Lafayette, Louisiana  70598-2447
(337) 988-3500
Counsel for Defendants/Appellees:
     State Farm Mutual Automobile Insurance Company
     Sabrina Davis

**Jerome H. Moroux**
**Broussard & David, LLC**
**Post Office Box 3524**
**Lafayette, Louisiana 70502-3524**
**(337) 233-2323**
**Counsel for Plaintiff/Appellant:**
    **Giles Hill**

**KEATY, Judge.**

Plaintiff appeals the trial court's judgment regarding allocation of fault and general damages. For the following reasons, the trial court's judgment is affirmed as amended.

## FACTS & PROCEDURAL HISTORY

This personal injury lawsuit involves an automobile collision which occurred in Broussard, Louisiana, between a left turning vehicle and another vehicle that was attempting to pass. On January 5, 2017, Giles Hill was driving a Dodge truck east on Louisiana Highway 92 (Young Street) near the intersection of Marteau Road. As he proceeded east, Hill approached from the rear a Jeep Grand Cherokee driven by Sabrina Davis. As Hill attempted to pass Davis's vehicle from the left side, Davis attempted to make a left turn onto Marteau Road. A collision occurred between both vehicles.

On November 27, 2017, Hill filed a petition for damages seeking medical expenses and damages for pain and suffering, loss of enjoyment of life, loss of earnings, and loss of earning capacity. Plaintiff's petition named as Defendants Davis and State Farm Mutual Automobile Insurance Company, as the insurer of the vehicle driven by Davis. He alleged that the collision occurred because Davis failed to maintain a proper lookout, failed to remain attentive, operated her vehicle in a careless and reckless fashion, and operated her vehicle at an unsafe speed. As a result, Plaintiff alleged that he sustained injuries to his left hand, neck, upper back, and lower back.

On February 19, 2019, a bench trial on the merits occurred. The trial court was tasked with determining: (1) whether the accident occurred within a legal passing zone; (2) whether Hill had control of the passing lane at the time of the accident; (3) whether Davis, when making the left turn, failed to observe Hill

passing; and (4) whether the accident caused Hill's injuries. The trial court discussed the duties imposed on a left turning driver as well as a passing driver, i.e., La.R.S. 32:104, La.R.S. 32:75, and La.R.S. 32:76. It determined that Hill and Davis violated the applicable statutes. The trial court considered the totality of the circumstances and found the parties contributorily negligent in causing the accident. It allocated 95% of the fault to Hill and 5% of the fault to Davis.

The trial court next considered the medical evidence presented at trial and concluded that the accident caused Hill's injuries. It awarded him $18,720.38, which was broken down as follows:

| | |
|---|---|
| General Damages | $2,000.00 |
| Past Lost Wages | $6,400.00 |
| Past Medical Expenses | $10,320.38 |

The award was reduced by 95% for a total award of $936.02. Costs were assessed to the parties based upon their allocation of fault. The trial court's judgment was signed on February 22, 2019.

Hill appeals the trial court's judgment and alleges the following assignments of error: (1) "The trial court erred in allocating fault in the manner between the parties[;]" and (2) "The trial court abused its discretion in awarding only $2,000.00 in general damages for the injuries Hill sustained and for the treatment Hill obtained as a result of the accident."

## STANDARD OF REVIEW

In *Duncan v. Kansas City Southern Railway Co.*, 00-66, pp. 10-11 (La. 10/30/00), 773 So.2d 670, 680-81, the Louisiana Supreme Court explained the standard of review regarding comparative fault determinations as follows:

> As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. [*Clement v. Frey*, 95-1119 (La. 1/16/96), 666 So.2d 607]. Therefore, an appellate court should

2

only disturb the trier of fact's allocation of fault when it is clearly wrong or manifestly erroneous. Only after making a determination that the trier of fact's apportionment of fault is clearly wrong can an appellate court disturb the award, and then only to the extent of lowering it or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion. *Clement*, 666 So.2d at 611; *Coco v. Winston Industries, Inc.*, 341 So.2d 332, 335 (La.1977).

In determining whether the trial court was clearly wrong in its allocation of fault, the appellate court is guided by the following factors set forth in *Watson v. State Farm Fire & Casualty Insurance Co.*, 469 So.2d 967, 974 (La.1985):

> (1) [W]hether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

These same factors guide the appellate court's decision with respect to the highest or lowest percentage of fault that could reasonably be assessed. *Clement*, 666 So.2d 607.

## DISCUSSION

### I. Allocation of Fault

In his first assignment of error, Hill contends the trial court failed to properly allocate fault in light of the facts in the case. He asserts the following factors as grounds for changing the trial court's erroneous allocation of fault: the roadway was marked with a broken yellow line; Davis was aware that vehicles regularly passed other vehicles; Davis breached the duty owed by a left turning vehicle; and Davis admitted that she violated the law requiring her to signal her intention to turn within 100 feet of the turn.

3

In opposition, Defendants contend that Hill violated the statute which mandates no passing within 100 feet of an intersection. Defendants opine that the trial court's finding on liability should not be disturbed given Hill's lack of credibility. Defendants further assert that if the roadway striping was really an issue, Hill should have added the responsible party as a defendant.

In Louisiana, a "left-turning motorist and the overtaking and passing motorist must exercise a high degree of care because they are engaged in dangerous maneuvers." *Kilpatrick v. Alliance Cas. & Reinsurance Co.*, 95-17, p. 4 (La.App. 3 Cir. 7/5/95), 663 So.2d 62, 66, *writ denied*, 95-2018 (La. 11/17/95), 664 So.2d 406. The duty of a left turning motorist is governed by La.R.S. 32:104 which provides, in pertinent part:

> A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.
>
> B. Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.

Pursuant to this article, a left turn is a dangerous maneuver which cannot be undertaken unless the turning driver ascertains that it can be safely made. *Layssard v. State of Louisiana, Dep't of Pub. Safety & Corrs.*, 07-78 (La.App. 3 Cir. 8/8/07), 963 So.2d 1053, *writ denied*, 07-1821 (La. 11/9/07), 967 So.2d 511. "A left-turning motorist involved in an accident is burdened with a presumption of liability and the motorist must show that he is free from negligence." *Id*. at 1059 (quoting *Thomas v. Champion Ins. Co.*, 603 So.2d 765, 767 (La.App. 3 Cir. 1992)). "The onerous burden placed upon a left-turning motorist is not discharged by the

4

mere signaling of an intention to turn." *Kilpatrick*, 663 So.2d at 66. The giving of a signal is immaterial if the left-turning motorist did not have the opportunity to safely make the turn. *Id.* Additionally, "in a vehicular collision case, the plaintiff may take advantage of a presumption of the defendant's negligence when the plaintiff proves the defendant executed a left-hand turn and crossed the center line at the time of impact." *Id*. at 66.

The duty of a vehicle passing on the left is governed by La.R.S. 32:73, which provides:

> The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions, and special rules hereinafter stated:
>
> (1)   Except when overtaking and passing on the right is permitted, the driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance, and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.
>
> (2)   Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal, and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle.

There are certain limitation on a vehicle passing to the left, as noted in La.R.S. 32:75:

> No vehicle shall be driven to the left side of the center of the highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction.

From the outset, we note that the trial court was presented with witness testimony, medical records, and other evidence regarding the accident. At trial,

5

Hill testified that the accident occurred at approximately 6:45 a.m. on Young Street, which he described as a two-lane road with a dotted yellow line with a speed limit of fifty-five miles per hour. He explained that two vehicles ahead of him were traveling at approximately forty miles per hour. Hill believed that he would have been late for work if he remained behind the two vehicles. In his statement given to police, Hill stated that he "was running late to work." He testified that he checked his mirror, checked over his left shoulder, then "got into the left lane and proceeded to go towards Highway 90 where [he] ended up hitting, colliding with [Davis]; hit the ditch pretty hard, bounced around until [he] kind of nosedived to [his] stopping point." His vehicle flew approximately 280 feet before landing in the ditch, according to Hill's testimony. The police report in the record explains that Hill passed an eastbound vehicle uninvolved in the crash and began to pass Davis's vehicle when the accident occurred. Hill testified that before he started passing the two vehicles, their brake lights were not illuminated. According to his testimony, Hill did not exceed the speed limit when passing the other vehicles. Hill acknowledged walking over to Davis's vehicle after the accident and apologizing to her.

According to Davis's trial testimony, she was traveling eastbound on Young Street and planned on turning onto Marteau Road. Before executing the left turn, she stopped at the intersection of Marteau Road to let a vehicle pass in the opposite direction. Davis activated her blinker by the time she had stopped at the intersection although she was uncertain as to whether she activated her blinker 100 feet prior to executing the turn. Davis explained that after the car passed from the opposite direction, she looked behind her to see if there was anyone passing so that she could make a left turn. According to Davis, she never saw Hill's vehicle before she began to turn. She saw Hill's vehicle after the crash. Davis

6

acknowledged the police report wherein she reported that there was a car immediately behind her. She explained that car was not the same car that struck her. Davis testified that following the accident, Hill "came up, he said he was sorry, it was all his fault, he was running late for work, he was speeding; asked if I was okay." Davis testified that she was familiar with Young Street and knew that vehicles passed other vehicles.

Monica Gary, who witnessed the accident, also testified at trial. Gary was on Marteau Road at the stop sign waiting to cross over Young Street onto the other end of Marteau Road. She saw a white Jeep Cherokee stopped at the intersection waiting to make a left turn onto Marteau Road with its blinker light on. She only saw the truck right before it hit the Jeep; not before when the truck started to pass. Gary opined that the truck was at least traveling the speed limit. Gary, who exited her vehicle following the crash to check on the victims, said that the driver of the truck "walked up after the crash, had a little bit of a bloody nose, and told [Davis] 'I'm so sorry. It's my fault. I was running late for work.'"

The trial court was also presented with the deposition testimony of Sergeant Christopher Rudd, the investigating officer. He concluded that Davis's violation was "other improper turning" based upon statements from Hill, Davis, and Gary. Sergeant Rudd explained that "from what everyone on the scene described, [Hill's vehicle] was already in the left lane passing vehicles." He revealed that Hill's vehicle "already had control of that travel lane because it was a dotted line in that section of roadway." Sergeant Rudd acknowledged Hill had control of the passing lane at the time of the accident. According to Sergeant Rudd, Davis was inattentive because she failed to observe Hill's vehicle approaching and attempting to pass. On the other hand, Sergeant Rudd did not cite Hill with any violations. He explained that the road had a yellow dashed line. Sergeant Rudd acknowledged

7

that if the road was a no passing zone, he would have noted that in his police report. His testimony is confirmed by the police report which was also entered into evidence. The police report lists Hill's speed as fifty-five miles per hour. Sergeant Rudd's narrative in the police report provides that Hill "was passing in an area clearly marked as a passing zone, as indicated by a yellow dashed line in the center of the roadway."

Despite the presence of a yellow dotted line, the trial court found Hill in violation of La.R.S. 32:76 which provides, in pertinent part:

A. No vehicle shall at any time be driven to the left side of the highway under the following conditions:

. . . .

(2) when approaching within one hundred feet of or traversing any intersection or railroad grade crossing;

. . . .

B. The foregoing limitations shall not apply upon a one-way roadway or a multiple lane highway nor to the driver of a vehicle turning left into or from an alley, private road or driveway.

In brief, State Farm contends that La.R.S. 32:76 supports the trial court's allocation of fault since the accident occurred within 100 feet of an intersection. On review, we note that Louisiana jurisprudence has held this statute inapplicable with respect to contributory negligence when the presence of a dotted line is indicated and there are no signs indicating a "no passing zone." In *Williams v. Travelers Indemnity Co*., 49,961 (La.App. 2 Cir. 7/22/15), 171 So.3d 436, the driver of a left turning tractor (plaintiff) filed a petition for damages against a deputy sheriff (defendant) and its insurer following a collision that occurred when the tractor turned left while the defendant was passing the tractor. The trial court ruled in favor of the defendant. On appeal, the plaintiff argued that the defendant should have been assessed with fault because he attempted to pass the tractor

8

within 100 feet of the intersection in violation of La.R.S. 32:76. The appellate court disagreed, noting the testimony of the investigating officer that the road markings consisted of a yellow broken line which indicated that traffic in either direction was allowed to pass if safe to do so. The appellate court acknowledged there were no signs indicating the area was a "no passing zone." It held: "Based upon the evidence presented, we cannot say the trial court erred in finding that despite the general statutory prohibition on passing within 100 feet of an intersection, [the defendant] was not negligent in reasonably relying on the specific markings in that area of the roadway indicating that passing was allowed." *Id.* at 440.

In *Guillory v. Travelers Insurance Co.*, 241 So.2d 772 (La.App. 3 Cir. 1970), the plaintiff driver attempted to take a left turn and collided with the defendant driver who was attempting to pass on the left. The trial court found that the defendant driver was contributorily negligent by passing within 100 feet of an intersection in violation of La.R.S. 32:76. In affirming the trial court's judgment, the appellate court held: "It is true there were no signs marking the intersection nor any 'no passing' lines on Highway 27. However, this is not an absolute requirement of the statute or the jurisprudence." *Id.* at 774.

In this case, the trial court found that Hill violated La.R.S. 32:76 and that Davis violated the statutes applicable to a left turning driver. The trial court, however, offered no explanation with respect to its allocation of fault. On review, the testimony and evidence reveals that Hill was passing the vehicles because he was going to be late for work. However, there is no definitive evidence showing that Hill was speeding. The evidence shows that he safely had control of the lane when passing. The evidence shows that Davis had on her blinker, although she was unsure whether she initiated the blinker when within 100 feet of the

9

intersection as required by La.R.S. 32:104(B). Davis was cited with a violation of improper turning and found inattentive whereas Hill was cited with no violations. It is undisputed that the accident occurred on a two-lane road with a yellow dotted line. It was not an area clearly marked as a no passing zone.[1] Davis's own testimony reveals that she knew motorists regularly passed other motorists given her familiarity with Young Street. In light of the foregoing, we find that it was reasonable for Hill to rely on the specific markings in that area of the roadway indicating passing was allowed. Accordingly, the trial court's allocation of fault was manifestly erroneous in this regard.

Specifically, the trial court's allocation of 95% of the fault against Hill, who was passing in an area not clearly marked as a no passing zone, was excessive. In *Roberts v. Robicheaux*, 04-1405 (La.App. 3 Cir. 3/2/05), 896 So.2d 1232, *writ denied*, 05-792 (La. 5/13/05), 902 So.2d 1021, the trial court allocated 50% of the fault to the driver of the passing vehicle and 50% of the fault to the driver of the left turning vehicle. The judgment was amended by this court on appeal. The third circuit held that the passing driver was 75% at fault in causing accident "**because he attempted to pass in a 'no-passing' zone,**" and the left turning driver was 25%

---

[1] In *Trahan v. Deville*, 05-1482, p. 4 (La.App. 3 Cir. 5/10/06), 933 So.2d 187, 191, *writ denied*, 06-2103 (La. 11/17/06), 942 So.2d 534, this court stated: "[T]he roadway at the accident site was marked with a dashed yellow line meaning the area was a legal passing zone. Motorists must be allowed to rely upon traffic markings such as these when operating their vehicles."

No passing zones are governed by La.R.S. 32:77 which provide:

A. The Department is hereby authorized to determine those portions of any highway where overtaking and passing or driving to the left of the roadway would be especially hazardous, and shall by appropriate signs or markings on the roadway indicate the beginning and end of such zones, and when such signs and markings are in place and are clearly visible to an ordinary observant person, every driver shall obey the directions thereof.

B. Where signs or markings are in place to define a no-passing zone as set forth in paragraph A, no driver shall at any time drive on the left side of the roadway within such zone, or on the left side of any pavement striping, designated to mark such no-passing zone, throughout its length.

10

at fault for improper lookout and signalization. *Id*. at 1235 (emphasis added). This court noted that the evidence clearly showed the accident occurred in a "no-passing" zone.

Conversely, the evidence in this case shows that the crash did not occur in a clearly marked no passing zone. Rather, the evidence reveals the presence of a yellow dotted line. The evidence also reveals that the crash occurred within 100 feet of an intersection. Accordingly, we amend the judgment to allocate 50% of the fault to Hill and 50% of the fault to the Davis.

**II.   Damages**

In his second assignment of error, Hill contends the trial court abused its discretion in awarding only $2,000.00 in general damages for the injuries he sustained and for the medical treatment he obtained as a result of the accident.

General damages, which include pain and suffering, physical impairment and disability, and loss of enjoyment of life, are speculative in nature and incapable of being fixed with mathematical certainty. *Thibeaux v. Trotter*, 04-482 (La.App. 3 Cir. 9/29/04), 883 So.2d 1128, *writ denied*, 04-2692 (La. 2/18/05), 896 So.2d 31. The fact finder's award of general damages is subject to the abuse of discretion standard of review. *Simon v. Lacoste*, 05-550 (La.App. 3 Cir. 12/30/05), 918 So.2d 1102. A general damage award should only be increased or reduced if it is beyond that which a reasonable trier of fact could assess for the effects of a particular injury to a particular plaintiff under the particular circumstances of the case. *Id*. In making that determination, the appellate court should not rely on a comparison of prior awards in cases with similar medical injuries, but should rely on the primary considerations of the duration and severity of the plaintiff's pain and suffering. *Guillot v. Doe*, 03-1754 (La.App. 3 Cir. 6/30/04), 879 So.2d 374. If an appellate court finds that a general damages award is unreasonable, the court should raise or

lower the award to the highest or lowest point that would have been within the fact finder's discretion. *Simon*, 918 So.2d 1102.

In this case, the trial court's award was based upon the testimony and evidence presented at trial. According to Hill's testimony at trial, the crash caused his vehicle to travel approximately 280 feet before landing in the ditch. His vehicle's airbags deployed and his windshield was shattered. Hill explained that his nose was bleeding although he was able to exit his car. He informed the paramedics that he was fine although he subsequently went to Lafayette General Medical Center with complaints of pain to his left hand. Medical records reveal that he underwent an x-ray of his left hand which revealed no fracture or dislocation. Hill was diagnosed with musculoskeletal pain and prescribed Flexeril and Norco.

Hill presented to a Youngsville Chiropractic Clinic on January 11, 2017. According to the medical questionnaire, he had complaints of back pain, stiffness, and cramps from lifting the wrong way. On the questionnaire, the "Accident Information" section is scratched out. A medical note from the clinic dated January 11, 2017, reveals that Hill wanted his insurer, Blue Cross, to pay for his treatment and did not want to file as a personal injury patient. At trial, Hill testified that he would have had to pay out of pocket if he indicated that his symptoms resulted from the accident rather than from lifting the wrong way.

Hill presented to Lourdes After Hours on January 21, 2017, with back pain arising from a motor vehicle accident. He underwent an x-ray of his lumbar spine which revealed no fracture nor soft tissue swelling. Hill was discharged and prescribed Ultram for pain.

The trial court was presented with the medical records and deposition testimony of Plaintiff's expert in physical medicine and physiatry, Dr. Robert

12

Franklin. Hill presented to Dr. Franklin on January 30, 2017, with complaints of neck and lower back pain. During his initial evaluation, it was noted that Hill was involved in a work-related accident in January 2016 and "got well" by June 2016, with back pain returning in October or November 2016. Dr. Franklin diagnosed Hill with cervical and lumbar strain with possible underlying spinal etiology. A cervical and lumbar MRI was ordered and revealed disc herniation. Dr. Franklin recommended physical therapy and referred Hill to an orthopedic surgeon for a spinal consultation. Dr. Franklin noted Hill was temporarily disabled from employment. Hill's last appointment with Dr. Franklin was on May 22, 2017. Medical records reveal that Hill participated in approximately 17 physical therapy sessions during his treatment with Dr. Franklin.

Medical records reveal that Hill presented to Dr. Neil Romero, an orthopedic surgeon, on March 15, 2017. Dr. Romero related Hill's symptoms to the crash and kept him off of work pending improvement from physical therapy. Hill presented to Dr. Romero again on April 12, 2017, wherein he noted that Hill had made significant progress. Dr. Romero noted that Hill felt that he had improved by 90% with respect to his lumbar and cervical pain. Dr. Romero indicated that Hill completed physical therapy and released him to work at full duty without restrictions.

Hill testified that prior to the instant accident, he sought treatment from Youngsville Chiropractic Clinic in 2016 for back pain arising from a work accident. Hill testified that he also sought treatment from his friend's father, Dr. Michael Smyth, II, for the work-related back pain. Pharmacy records and Hill's testimony reveals that he filled three prescriptions for oxycodone-acetaminophen prior to the accident at issue, as follows: 40 pills on December 5, 2016, 40 pills on December 19, 2016, and 40 pills on December 30, 2016. Hill admitted that he was taking the

pills for pain, although he had not consumed all of the pills by the time the instant accident occurred. Pharmacy records further reveal that Hill filled another prescription for 40 oxycodone-acetaminophen pills, prescribed by Dr. Smyth, after the accident on January 11, 2017. Hill testified that he was experiencing back pain approximately two or three months prior to the accident at issue, although the pain "wasn't the [sic] way after the accident."

Considering the foregoing evidence and testimony, the trial court found that the accident caused the injury. It awarded Hill $10,320.38 for medical expenses, which was the amount requested by him. The trial court awarded him $6,400.00 for lost earnings, which was stipulated to by the parties. It also awarded him $2,000.00 for general damages. Based upon the testimony and medical evidence in the record on review, we find the trial court abused its discretion in its award of general damages.

In *Moraus v. Frederick*, 05-429 (La.App. 3 Cir. 11/2/05), 916 So.2d 474, this court affirmed the trial court's award of $46,000.00 in general damages to a plaintiff who sustained soft tissue injuries from an automobile accident. We note that *Moraus* differs from the present case with respect to the amount of time medical treatment was rendered to the injured plaintiff: i.e., the plaintiff in *Moraus* underwent treatment for fifteen months whereas Hill underwent treatment for approximately four months. We find relevant, however, the *Moraus* court's affirmation of the trial court's general damages award of "$3,500.00 per month for the first two months; $2,500.00 per month for September 2003 through September 2004; and $1,000.00 per month for October, November and December of 2004 (through date of trial)." *Id*. at 481. The appellant argued that the foregoing award, which averaged out to approximately $2,625.00 per month, was unreasonable. The *Moraus* court disagreed with the appellant's argument, noting that "Moraus was

14

consistent in his treatment and [was] observed by the trial court not to be a malingerer." *Id*. at 481. In this case, and similar to *Moraus*, there was no finding that Hill was a malingerer, and the trial court found that all of his medical treatment was related to the automobile crash.

In *Le v. Nitetown, Inc.*, 10-1239 (La.App. 3 Cir. 7/20/11), 72 So.3d 374, *writ denied*, 11-1826 (La. 11/4/11), 75 So.3d 924, a plaintiff was injured by an aggressive bouncer at a nightclub. The jury awarded the plaintiff $13,000.00 for pain and suffering and $4,432.35 for mental anguish based upon medical records which revealed:

> Mr. Le's emergency room examination revealed that one of the multiple head lacerations indicated that the corner of something had hit him, possibly a ring, and another looked like a crush-type injury with some blunt edge also. He had multiple lacerations around his head with approximately six hematomas to the forehead. His brain CT was normal, and the CT of facial bones identified no facial fracture; MRI's of his left knee and shoulder were negative. Mr. Lee [sic] had physical therapy and treated with an orthopaedic surgeon for his shoulder, back, and knee, for about three months.

*Id*. at 381. This court found the plaintiff's general damage award abusively low and increased it to $50,000.00, inclusive of physical pain and suffering and mental anguish. *Id*.

In *Lebato v. Safeway Insurance Co.*, 03-131 (La.App. 3 Cir. 6/4/03), 852 So.2d 446, the plaintiff was injured in an automobile collision. The trial court awarded the plaintiff $20,000.00 in general damages and $1,500.00 for loss of enjoyment of life. This court upheld the trial court's award and explained:

> The record shows Lebato was under a doctor's care for two months, participated in physical therapy during that time, and continued with exercises at home for another two months. She suffered from pain, muscle spasm, sleep disturbances, and depression. The trauma of the accident included a severe impact, transportation by ambulance, loss of her mother's car, and difficult, frustrating, and ultimately unsuccessful dealings with an insurance adjustor. The evidence presented at trial revealed Lebato to be a very active, self-reliant,

15

industrious woman, the very traits that undoubtedly contributed to her quick recovery.

*Id*. at 449.

Based on the foregoing, we increase Hill's general damage award to $20,000.00.

## DECREE

For the foregoing reasons, we amend the judgment to reduce the allocation of fault regarding Giles Hill to 50% and increase the allocation of fault regarding Sabrina Davis to 50%. We amend the trial court's award for general damages by increasing it to $20,000.00. The trial court's judgment is affirmed in all other respects. Costs of this appeal are assessed equally to Plaintiff, Giles Hill, and Defendants, Sabrina Davis and State Farm Mutual Automobile Insurance Company.

**AFFIRMED AS AMENDED.**